METHODIST EPISCOPAL CHURCH BARACA CLUB, Appellant, vs. CITY OF MADISON, Respondent.

*March 5—April 3, 1918.*

*Taxation: Exemption: Construction of statutes: "Benevolent association."*

1. Statutes exempting property from taxation are not to be enlarged by construction.
2. A church club which was organized to provide for Bible study and for religious, social, and moral culture, and to maintain a home for its members, to whom no pecuniary benefits are ever to be paid, and which maintains a clubhouse as a home for its members, renting rooms to nonmembers when not desired by members, operating a public café, furnishing a meeting place for a Bible study class and aiding it to maintain interest in its work and to secure new members, but whose benevolent activities, properly so called, have consisted in securing positions for a few young men and furnishing a small number of free meals, is not a "benevolent association" whose property is, under sec. 1038, Stats., exempt from taxation. ESCHWEILER, J., dissents.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

This is an action brought to recover taxes paid to the city of *Madison,* on the ground that the property on which they were levied is exempt from taxation. Appellant is a corporation organized under the provisions of ch. 86 of the

Statutes, without capital stock. As set forth in the articles
of incorporation, its purposes are to provide for the study of
the Bible and for religious, social, and moral culture and the
obtaining and carrying on of a home for the club. No pe-
cuniary benefits shall ever be paid to any member. Only
members of the Baraca Bible Class of the Methodist Episco-
pal Church are eligible to membership in the club. Appli-
cants must receive a five-sixths vote of the board of directors.
There are membership dues of $5 per annum. The mem-
bership of the club is from thirty to forty, and varies from
time to time. There are two general reading rooms, two large
rooms on the first floor used for club purposes, containing a
piano and victrola in the parlor, a general supply of books and
periodicals in the reading room, and a few sets of chess and
checkers that are very much used. The rooms in the club-
house are rented to members. A rule of the house gives a
club member preference. Any club member who wishes to
come in can have the room occupied by a nonmember.
Table board is also supplied. The board is arranged by
meal tickets, so much for a meal. Tickets are sold to mem-
bers and others. There is a house secretary who is manager
of the house. The appellant opened the house or club on
February 21, 1916. During the remainder of 1916 and
the four months of 1917 its income was as follows: dues from
members, $311.82; room rent, $1,106.93; board for the same
period, $5,278.98, making a total income of $6,697.73. In
addition to this income appellant made a loan of $500, mak-
ing the total receipts $7,197.73. The total disbursements
of the club during the same period were $7,137, which dis-
bursements were made for groceries, meat, ice cream, ice, gas,
light, telephone, fuel, labor in kitchen and for care of rooms,
laundry, miscellaneous expenditures, payment on land con-
tract, insurance, repairs, plumbing, electric-light fixtures,
for victrola, records, and furniture. They have lectures in
the clubhouse every two weeks during the winter season.

To these lectures they often invite others besides the club members. There is a Bible study class every Monday evening and study class every Tuesday evening on the subject "Mind of the Master," a religious work, to which every one is invited that they can get. It meets in the clubhouse. Club members and class members and all the young men try to get other young men, invite them down there to supper occasionally, and then invite them to stay to Bible class. After that they have a mixer, so to speak, and get acquainted with the invited guests. The club aids the Baraca class in keeping up its interest in all these religious activities. They invoke blessing at the table. The record discloses that positions were secured for perhaps half a dozen young men. The only evidence that the funds of the appellant club have been used for benevolent purposes is that flowers were sent to one young man sick in the hospital which were paid for by special subscription. Some meal tickets were furnished on credit which were paid. A few scattering meals were furnished free.

The city of *Madison* imposed, and collected, taxes upon the clubhouse property. The corporation filed its claim with the city council of the city of *Madison* for a repayment of the tax, claiming the property to be exempt on the ground that it was the property of a benevolent society. From a disallowance of the claim by the city council an appeal was taken to the circuit court, where judgment was rendered against the corporation, and from that judgment the corporation appealed.

For the appellant there was a brief by *Hall, Baker & Whitcomb* of Madison, and oral argument by *Frank W. Hall.*

*William Ryan* of Madison, for the respondent.

OWEN, J. Sec. 1038, Stats., provides—sub. (3)—that "Personal property owned by any religious, scientific, literary, educational or benevolent association, . . . and the real

property necessary for the location and convenience of the buildings of such association and embracing the same, not exceeding ten acres," is exempt from taxation. Appellant claims that it is a benevolent institution. Exemption from taxation of property devoted to charity or benevolent purposes is made on the ground that such institutions perform services for the public and, to some extent at least, relieve the state from expense.

"The benevolent purposes of such an organization as the statute contemplates are, in a measure, akin to charitable purposes, in that they bestow benefits through their efforts and means on either its members or the public by assisting the needy or promoting some benefaction by advancing and supporting agencies of a beneficial public nature." *Green Bay Lodge v. Green Bay,* 122 Wis. 452, 458, 100 N. W. 837.

In that case exemption was denied the Elks clubhouse because, it was said:

"While some of the aims of the order are the promotion of benevolence and charity, it is the avowed and obvious purpose of the order to maintain this clubhouse as a suitable place for the members and their families to congregate for entertainment, amusement, and to provide refreshments. The bestowal of these privileges and benefits is not of a benevolent or charitable character. These privileges and benefits which every person may secure for himself and family for a consideration, according to his tastes, wishes, and means and which the members of this lodge thus provide by co-operation as a body for their mutual advantage, are not of a benevolent character, and serve no such purpose."

The *Baraca Club* seems to maintain the premises in question as a home for its itinerant members and those with no fixed place of abode in the city. Rooms are maintained which are rented to nonmembers only when they are not desired by members. A restaurant or café is operated which the public is invited to patronize. There is no evidence that either rooms or meals are furnished at reduced rates, or that such service is confined to the poor and needy, or that any

one benefits by these activities. Upwards of $7,000 was expended by the club between the time it started and the time of trial. The record discloses fully and in detail the purposes of these expenditures, from which it appears that substantially the entire sum was dispensed for expenses of maintenance, restaurant supplies, club furniture, club comforts, and in liquidation of the clubhouse debt.

Bible studies and religious observances on the part of the occupants of the club were shown, but they were such as usually prevail in religious homes, and simply mark the natural and to be expected inclinations of the members of a religious club and constitute an attraction for new members of similar tastes. Besides, appellant is not claiming exemption on the ground that it is a religious institution.

The activities of the club that may be characterized as benevolent seem to have consisted in securing positions for a few young men and in the furnishing of an inconsequential number of free meals. This is wholly insufficient to give it the cast of a benevolent society. The pervading and dominant purpose of the club was to furnish a home and a meeting place for the members of the Sunday school class; to maintain interest in the work of the class, and to facilitate the acquiring of new members thereof.

That the purposes of the club are laudable and its influence wholesome there can be no doubt. But statutes exempting property from taxation are not to be enlarged by construction. Taxation is the rule and exemption the exception. He who claims exemption must bring himself within the terms of the exception. We do not regard this as a doubtful or border-line case, and deem it unnecessary to refine upon the character of a benevolent association within the meaning of this statute.

Appellant cites the case of *St. Joseph's H. Asso. v. Ashland Co.* 96 Wis. 636, 72 N. W. 43, and numerous decisions from other states holding the property of Young Men's

Christian Associations exempt under the statutes of such states.    A most casual comparison reveals a wide and striking gap between the benevolent activities of those associations and those of the *Baraca Club,* both in character and extent.    They do not constitute authority for appellant's contention.    We are satisfied with the judgment of the lower court.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J. (*dissenting*).    The plaintiff, as appears by the express terms of its charter and the evidence, is not organized for any pecuniary benefit to its members, and any mercenary object is therefore expressly excluded.    The purposed reasons for its existence, as expressed by its articles of association, are supported by the evidence as to the manner of its existence and seem to me to take it without the class of those associations whose purpose is to provide entertainment and amusement for their members and to bring it within the wide field of benevolent associations intended to be fostered and encouraged by the exemption statute here involved.

The quantum of the result attained, especially in the early years of the existence of any such organization, cannot properly be made the standard by which benevolent purpose is to be ascertained, any more than was quantity the standard with the widow's mite.