INTERNATIONAL FOUNDATION OF EMPLOYEE BENEFIT PLANS, INC., f/k/a National Foundation of Health, Welfare & Pension Plans, Inc., Plaintiff-Appellant-Petitioner,

v.

CITY OF BROOKFIELD, Defendant-Respondent.

Supreme Court

*No. 78–455. Argued November 24, 1980.— Decided February 2, 1981.*

(Also reported in 301 N.W.2d 175.)

For the petitioners there were briefs by *Timothy C. Frautschi* and *Foley & Lardner* of Milwaukee, and oral argument by *Timothy C. Frautschi*.

For the respondent there was a brief by *George A. Schmus*, city attorney, of West Allis, *Harold H. Fuhrman*, special counsel, *Mark W. Ninneman*, of counsel, and *Wickert, Fuhrman & Ninneman, S.C.*, of Milwaukee, and oral argument by *Harold H. Fuhrman*.

BEILFUSS, C.J.   This is a review of a decision of the court of appeals which affirmed the judgment of the circuit court for Waukesha county, MAX RASKIN, Reserve Judge, Presiding.

This case involves a claim for a property tax refund commenced by the International Foundation of Employee

Benefit Plans, Inc., against the City of Brookfield pursuant to the terms of sec. 74.73, Stats. The complaint filed by the International Foundation alleged that it was exempt from property taxation as an educational association under sec. 70.11(4). This court has previously had to review the interlocutory orders of the trial court on two separate occasions. *See Int'l Found. Emp. Ben. Plans v. Brookfield,* 74 Wis.2d 544, 247 N.W.2d 129 (1976); *National Foundation v. Brookfield,* 65 Wis.2d 263, 222 N.W.2d 608 (1974). In the last of those cases we remanded the cause to the circuit court for trial. After a trial on the merits, judgment was entered against the taxpayer corporation.

An appeal was taken and, as noted above, the court of appeals affirmed the judgment of the circuit court. The case is reported as *International Foundation v. Brookfield,* 95 Wis.2d 444, 290 N.W.2d 720 (Ct. App. 1980). The court of appeals determined as a matter of law on the basis of undisputed facts that the International Foundation was not a traditional educational association within the meaning of sec. 70.11(4), Stats., and in light of the decision of this court in *Engineers & Scientists v. Milwaukee,* 38 Wis.2d 550, 157 N.W.2d 572 (1968).

We have thoroughly reviewed the record and briefs of counsel. We agree with the court of appeals' determination that the International Foundation does not conduct traditional educational activities such that it may qualify for a property tax exemption under sec. 70.11(4), Stats. This case is controlled by our opinion in *Engineers & Scientists v. Milwaukee, supra,* and we therefore summarily affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). The majority concludes that International Foundation is not

an educational association exempt from property tax under sec. 70.11(4), Stats.[1] The majority's rationale is that International Foundation "does not conduct traditional educational activities . . . [and] that . . . [t]his case is controlled by our opinion in *Engineers & Scientists v. Milwaukee* [38 Wis.2d 550, 157 N.W.2d 572 (1968)]." The majority does not adopt the opinion or rationale of the court of appeals.

I reach an opposite result. I conclude that International Foundation is an educational association exempt from property tax under sec. 70.11(4), Stats. My rationale is that International Foundation does conduct traditional

---

[1] Sec. 70.11(4), Stats., provides:

"The property described in this section is exempted from general property taxes:

". . .

"(4) EDUCATIONAL, RELIGIOUS AND BENEVOLENT INSTITUTIONS: WOMEN'S CLUBS; HISTORICAL SOCIETIES; FRATERNITIES; LIBRARIES. Property owned and used exclusively by educational institutions offering regular courses 6 months in the year; or by churches or religious, *educational* or benevolent *associations,* including benevolent nursing homes and retirement homes for the aged, and also including property owned and used for housing for pastors and their ordained assistants, members of religious orders and communities, and ordained teachers, whether or not contiguous to and a part of other property owned and used by such associations or churches; or by women's clubs; or by domestic, incorporated historical societies; or by domestic, incorporated, free public library associations; or by fraternal societies operating under the lodge system (except university, college and high school fraternities and sororities), but not exceeding 10 acres of land necessary for location and convenience of buildings while such property is not used for profit. Property owned by churches or religious associations necessary for location and convenience of buildings, used for educational purposes and not for profit, shall not be subject to the 10-acre limitation but shall be subject to a 30-acre limitation. Leasing such property to similar organizations for educational or benevolent purposes, where all the income derived therefrom is used for maintenance, shall not render the property taxable." (Emphasis added.)

educational activities and that this case is controlled by our opinion in *Engineers & Scientists v. Milwaukee.* I do not adopt the opinion or rationale of the court of appeals.

Were I to end the opinion at this point, as the majority does, nothing save the conclusion would distinguish the two opinions. More must be said.

Because this court has not in its previous cases enumerated the characteristics of an educational association or of "traditional educational activities"—Because this court has in its previous cases left the determinations of what is an educational association and what are traditional educational activities to be made on a case-by-case basis depending on the facts adduced at trial—And because the facts in the case at bar are distinguishable from the facts in *Engineers & Scientists v. Milwaukee,* I believe it is incumbent to explain any conclusion reached as to the tax status of International Foundation.[2] On review of this court's two previous opinions relating to International Foundation, on examination of this court's holding in *Engineers & Scientists v. Milwaukee* and this court's subsequent analyses of that opinion, and on comparison of the organization and operation of International Foundation and Engineers, I conclude that International Foundation is tax exempt.

---

[2] I believe it is incumbent on the majority to explain which characteristics of the International Foundation persuaded the court to conclude that International Foundation is not entitled to a tax exemption. *See* American Bar Association Comm'n on Standards of Judicial Administration, *Standards Relating to Appellate Courts,* Standard 3.36 Decisions and Opinions (1977); Aldisert, *The Judicial Process* 618–634 (1976). The majority's rationale is not only of significance to the parties before us but also is of state-wide interests to taxpayers and governmental units.

In *Foundation I*,[3] the City of Brookfield demurred to the International Foundation's complaint seeking tax exempt status and a property tax refund. In 1974 this court held the complaint defective, concluding that in light of *Engineers & Scientists v. Milwaukee* the complaint had to set forth supporting facts concerning International Foundation's purposes and functions. The court emphasized that the determination of whether an entity is an educational association "requires a careful analysis of the facts concerning how the property is actually used."[4] Offering further guidance to the parties and trial court, the court interpreted *Engineers & Scientists v. Milwaukee* as requiring an "educational association" to be devoted to "traditional" educational activities in order to qualify for tax exemption. The court also explained that Engineers was not entitled to tax exempt status since the "organization's functions were for the continuing education and professional advancement of engineers and scientists, and included promoting greater employment opportunities for its members . . . ." *Foundation I*, 65 Wis.2d at 266.

Following *Foundation I*, International Foundation filed amended complaints; the City of Brookfield demurred to the complaints; and the validity of the complaints came

[3] *National Foundation v. Brookfield*, 65 Wis.2d 263, 222 N.W.2d 608 (1974) (referred to as *Foundation I*).

[4] The court said, "It is clear under prior decisions of this court that to qualify as an 'educational association' an organization must be substantially and primarily devoted to educational purposes.[2] To determine whether this criterion is satisfied in any case requires a careful analysis of the facts concerning how the property is actually used.[3] . . ."

"[2] *Engineers & Scientists v. Milwaukee* (1968), 38 Wis.2d 550, 157 N.W.2d 572.

"[3] *State (Board of Regents) v. Madison* (1972), 55 Wis.2d 427, 433, 198 N.W.2d 615 ('The use made of property determines whether it is subject to taxation or whether it is entitled to tax exemption.')" *Foundation I*, 65 Wis.2d at 265.

before this court for a second time. The court stated in 1976 that "the question to be resolved is whether the complaints 'specifically set forth facts showing that plaintiff is engaged in the kind of traditional educational activities which would entitle it to receive tax exempt status.' "[5] This court found that the complaints alleged facts distinguishing the organization of the International Foundation from that of Engineers and alleged facts "showing just the type of educational activities [International Foundation] did engage in." *Foundation II*, 74 Wis.2d at 549. Accordingly this court overruled the demurrer to the amended complaints.

In this opinion the court recognized that it had never defined the term "educational association" other than to restrict its bounds to "traditional" educational activities, a term which also was not defined.[6] Again this court attempted to explain its holding in *Engineers & Scientists v. Milwaukee* and again the court emphasized that Engineers was an organization that engaged not only in continuing education but also in the advancement of a particular group of professionals. Describing the holding of *Engineers & Scientists v. Milwaukee,* the court stated: "It held that a particular organization whose overall function was for the continuing education and professional advancement of engineers and scientists was not engaged in traditional educational activities." *Foundation II,* 74 Wis.2d at 549.[7]

---

[5] *International Foundation of Employee Benefit Plans, Inc. v. City of Brookfield,* 74 Wis.2d 544, 247 N.W.2d 129 (1976) (referred to as *Foundation II*).

[6] In *Foundation II* we said *"Engineers & Scientists, supra,* did not define specifically what traditional educational activities were." 74 Wis.2d at 549.

[7] The court of appeals similarly interpreted our holding in *Engineers & Scientists* as resting on the fact "that one of the main purposes for the education provided by *Engineers & Scientists* was to improve the employment opportunities of the organi-

At the trial which followed *Foundation II*, International Foundation proved the facts set forth in the complaints. The issue before the court of appeals was whether the essentially undisputed activities of International Foundation render it tax exempt under sec. 70.11 (4), Stats. 1977. This is a question of law.

In a lengthy and carefully considered opinion, with which I do not agree, the court of appeals defined educational associations and traditional educational activities as encompassing charitable objectives. The court of appeals explained:

". . . Thus it appears that the term 'traditional' educational activities must include, as a main ingredient, traditional charitable objectives. The education must be directed at a charitable purpose.

". . .

". . . [T]he education provided must be systematic instruction, either formal or informal, directed to an indefinite class of persons. To meet the charitable objectives, it must be the type of education which benefits the general public directly and must be the type that would ordinarily be provided by the government or that would in some way lessen the burdens of the government.

"Based on this definition, we must now determine if International Foundation is devoted to 'traditional' educational activities. The main issues are: (1) whether the education provided by International Foundation is provided to an indefinite class of persons and benefits the public directly, and (2) whether the type of education is such that the government is relieved of a burden by International Foundation's program. . . ." *Foundation III*, 95 Wis.2d at 455, 456.

---

zation's members, and therefore the association's activities were not generally for the public benefit. They were directed to a limited or definite class of people for, at least partially, their own benefit." *International Foundation v. Brookfield*, 95 Wis.2d 444, 457, 290 N.W.2d 720 (Ct. App. 1980) (referred to as *Foundation III*).

Applying this "charitable" standard to International Foundation, the court of appeals concluded that International Foundation is not engaged in traditional education for tax exempt purposes, because it is organized to help a definite class of people, defined by the court of appeals as "the segment of society that serves joint labor-management employee benefit plans born out of the Taft-Hartley Act . . . [rather than] mankind in general." The court of appeals further concluded that 'nothing International Foundation "does relieves the public or government of a burden." *Foundation III,* 95 Wis.2d at 459, 460.

I reject, as does the majority, the incorporation of a "charitable element" into the statutory term "educational associations" and into this court's phrase "traditional educational activities." Sec. 70.11 (4), Stats., grants tax exempt status to educational associations and to benevolent associations, thus apparently drawing a distinction between the two. Subsection (4) of sec. 70.11 does not refer to charitable associations.

I join the parties and the majority in viewing the instant case as controlled by the principles set forth by this court in *Engineers & Scientists v. Milwaukee.* I therefore turn to *Engineers & Scientists v. Milwaukee* to analyze the determinative factors governing the denial or granting of tax exempt status. This court's denial of tax exemption to Engineers appears to rest on three characteristics of the organizational structure and operation of Engineers: (1) Engineers was limited to the engineering and scientific professions; (2) Engineers was engaged in "continuing education"; and (3) Engineers' organization and operations were directed to advance the members' employment opportunities. The court summarized the educational programs of Engineers by commenting that the "continuing education indulged in by ESM is obviously not limited to education

in the traditional sense but partakes also of the promotion of the general welfare of the engineering and scientific professions" and "smacks of the exchange of information for improved employment opportunities." *Engineers & Scientists v. Milwaukee,* 38 Wis.2d at 558.

In *Engineers & Scientists v. Milwaukee* this court neither held nor intimated that any one of these three characteristics standing alone or even that any two together would disqualify an organization from exemption as an educational association. Nothing in the court's opinion suggested that these three characteristics were the only characteristics which would disqualify an organization from being a tax exempt educational association. In sum the opinion failed to define what characteristics qualify an entity for tax exemption. It was instead content to describe the characteristics of Engineers which disqualified that entity.

Given the state of the law after *Engineers & Scientists v. Milwaukee,* International Foundation attempted to gain tax exempt status by distinguishing itself from Engineers in the three organizational and operational characteristics which this court considered determinative of Engineers' tax status. The International Foundation proved (1) that it was not limited to educating one group of professionals; it was engaged in "education for a wide variety of persons of different professions and trades"; (2) that its educational activities consisted of offering courses, engaging in research and making available its library facilities and that its courses were of a "basic nature" to train new trustees, as well as of a continuing educational nature to train experienced trustees; and (3) that it was a "pure" educational association, a sec. 501(c)(3), I.R.C. entity, devoted solely to educational purposes and that it was not a business league devoted to the promotion of its mem-

bers such as Engineers which is a sec. 501(c)(6), I.R.C. entity.[8]

It is the last of these three factors which I conclude to be the key difference between the two entities and which entitles International Foundation to be tax exempt. International Foundation's activities, unlike those of Engineers, were solely educational; none of International Foundation's resources were expended in promotion of employment opportunities of members of a particular trade or profession. International Foundation, unlike Engineers, does not view itself—and is not perceived—as a business league.[9] The key similarity be-

[8] Reg sec. 1.501(c)(3)–1(d)(3), IRC, states that "[t]he term 'educational', as used in section 501(c)(3), relates to—

"(a) The instruction or training of the individual for the purpose of improving or developing his capabilities; or

"(b) The instruction of the public on subjects useful to the individual and beneficial to the community."

Reg sec. 1.501(c)(6)–1, IRC, defines a business league as "an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus, its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. . . ."

[9] There are, in addition, other differences between Engineers and the International Foundation. For example, Engineers carried on its educational activities in the building for which tax exemption was claimed. International Foundation uses its building for library, research and administrative purposes; the Foundation's educational programs are held in various places around the country. I do not find this facet of International Foundation's operations significant to its tax exemption. The majority expresses no opinion on this issue.

Brookfield raised other issues such as whether International Foundation in fact is a nonprofit organization and whether International Foundation's primary and substantial purpose was to provide education rather than tax-free vacations to its members.

tween International Foundation and Engineers is that both devote significant efforts to continuing education. I do not view this similarity as fatal to International Foundation's claim for exemption. Sec. 70.11(4), Stats., clearly and unmistakably exempts property owned by "educational associations," as well as by "educational institutions offering regular courses 6 months in the year." Sec. 70.11(4), Stats., does not exclude, explicitly or implicitly, continuing education from its purview. If the majority means to disqualify educational associations expending all or a substantial part of their resources in the field of continuing education, it is amending or perhaps repealing the statute, not interpreting it. If International Foundation can not qualify under sec. 70.11(4), Stats., what entity devoted to continuing education can?[10]

Although Brookfield's criticism of International Foundation's operations has some merit, I was persuaded by International Foundation's brief on these issues. If I were writing for the majority, I would have to discuss these issues in depth. As a dissenter, I have the luxury of treating the issues in a cursory fashion.

[10] "The statute involved (sec. 70.11(4), Stats.) is clear and unmistakable in language and intent. The legislature has exempted from taxation property owned and used by 'educational . . . associations.' This is in addition to the tax exemption granted to 'educational institutions offering regular courses 6 months in the year.' The legislature goes beyond tax exemption for schools, colleges and universities to encourage the growth and development of nongovernmental associations that are educational in their work and purpose.

"  . . .

"Of course, the . . . activities are in the field of continuing education. Education is a lifelong process. It does not end with getting a degree or diploma. Where in the statute does it state that educational associations providing continuing education are outside the exemption granted? . . . The majority opinion . . . amends the statute to exclude educational associations in the field of continuing education. Actually, it may very well have repealed the tax exemption for educational associations, for, if this asso-

Viewing *Engineers & Scientists v. Milwaukee* as controlling, I would hold that International Foundation is an educational association which conducts traditional educational activities which qualify it for property tax exemption under sec. 70.11(4), Stats. I therefore respectfully dissent.

I am authorized to state that Justice DONALD STEINMETZ joins in this dissenting opinion.

ciation is not an educational association, it is difficult to see anywhere in the state a group that could or would be so considered." *Engineers & Scientists v. Milwaukee,* 38 Wis.2d at 562, 563 (Robert W. Hansen, J. dissenting).

Justice Hansen's reasoning was correct but not applicable to Engineers which was a business league. Justice Hansen's reasoning is applicable to the organization and operation of International Foundation.