JANESVILLE COMMUNITY DAY CARE CENTER, INC.,
Plaintiff-Respondent,

v.

Frank SPODEN and the City of Janesville,
Defendants-Appellants.

Court of Appeals

*No. 84–834. Submitted on briefs August 1, 1985.—*
*Decided September 12, 1985.*
(Also reported in 376 N.W.2d 78.)

For the defendants-appellants the cause was submitted on the brief of *Berta S. Hoesly,* city attorney, and *Waldemar Klimczyk,* assistant city attorney, of Janesville.

For the plaintiff-respondent the cause was submitted on the brief of *Dennis L. Hansch* and *Nowlan & Mouat* of Janesville.

Before Gartzke, P.J., Dykman, J. and Eich, J.

DYKMAN, J.   The City of Janesville and its assessor appeal from a judgment declaring the property of Janesville Community Day Care Center, Inc., exempt from general property taxation under sec. 70.11 (4), Stats.[1] The issue is whether the center qualifies as an

---

[1] Section 70.11 (4), Stats., exempts:
Property owned and used exclusively by educational institutions offering regular courses 6 months in the year; or by churches or religious, educational or benevolent associations. . . .

"educational . . . association" under that statute. Because we conclude that it does, we affirm.

Respondent operated a licensed child day-care facility in rented space from 1969 until 1980. In 1980, respondent purchased and renovated a former Janesville public school building. The city assessed taxes on respondent's real and personal property in 1981 and 1982. Respondent did not pay the taxes, claiming it was an educational organization under sec. 70.11(4), Stats., and requested removal of the property from the tax rolls. Appellants refused and respondent brought this declaratory judgment action. At trial, respondent presented proof on its educational status. The trial court held that respondent's property was exempt and this appeal followed.

## EXEMPTION

Tax exemptions are a matter of legislative grace, not of right. *Midcontinent Broadcasting Co. v. Dept. of Revenue*, 98 Wis. 2d 379, 390, 297 N.W.2d 191, 197 (1980). "Taxation is the rule and exemption is the exception." *Alonzo Cudworth Post No. 23 v. Milwaukee*, 42 Wis. 2d 1, 13, 165 N.W.2d 397, 404 (1969), quoting *M.E. Church Baraca Club v. Madison*, 167 Wis. 207, 211, 167 N.W. 258, 259 (1918). "An exemption from taxation must be clear and express. All presumptions are against it, and it should not be extended by implication." (Citations omitted.) *Soo Line R. Co. v. Department of Revenue*, 89 Wis. 2d 331, 359, 278 N.W.2d 487, 500 (Ct. App. 1979), *aff'd*, 97 Wis. 2d 56, 292 N.W.2d 869 (1980).

Section 70.11(4), Stats., exempts the property of "educational . . . associations" from general property

taxes.[2] Appellants argue that respondent is not an educational organization within the meaning of sec. 70.11(4).

Appellants' attack appears to focus on the substance of the trial court's findings numbered 10 through 12:

10. Plaintiff has a structured and regularly scheduled curriculum.

11. Plaintiff provides education within the traditional understanding of the term and the property is owned exclusively for the purpose of its educational functions.

12. Plaintiff has an educational purpose and function and although custodial services are provided, such services are incidental to the primary purpose of education.

Appellants maintain that respondent's primary purpose is the routine custodial care of children whose parents, because of jobs or other obligations, cannot pro-

---

[2] Section 70.11(4), Stats., exempts the property of both qualifying "educational . . . associations" and "educational institutions." The legislature has not defined these terms and we have found no case dealing directly with the question. We note, however, that the exemption of property owned and used by "educational . . . associations" has been viewed as an exemption

"in addition to the tax exemption granted to 'educational institutions offering regular courses 6 months in the year.' The legislature goes beyond tax exemption for schools, colleges and universities to encourage the growth and development of nongovernmental associations that are educational in their work and purpose."

*International Foundation v. City of Brookfield,* 100 Wis. 2d 66, 76, n. 10, 301 N.W.2d 175, 180 (1981) (Abrahamson, J., dissenting) (quoting *Engineers & Scientists v. Milwaukee,* 38 Wis. 2d 550, 562, 157 N.W.2d 572, 578 (1968) (Hansen, J., dissenting)).

Because there is no contention that Janesville Day Care Center is an "educational institution" under the statute, we apply only those tests appropriate to the "educational . . . association" status the center claims.

It is undisputed that respondent fulfills the other requirements of sec. 70.11(4), Stats.,—that it is nonprofit and that the property it seeks to exempt is less than 10 acres and necessary for the location and convenience of buildings.

vide daytime supervision. They argue that the educational part of respondent's program is too small a fraction of its activities to be a primary function. They also contend that respondent's educational activities are nontraditional in that they are not administered by licensed teachers and are not degree or certification oriented and, therefore, are not among the types of programs customarily exempted. Finally, appellants contend that the legislature has not expressly provided an exemption for day-care centers.[3]

The issue is not as broad as appellant contends. We do not consider whether all day-care centers are exempt educational associations, but only whether respondent is exempted.

To qualify its property as exempt under sec. 70.11 (4), Stats., respondent must show that it is a nonprofit organization

substantially and primarily devoted to educational purposes. Five statutory tests must be passed: (1) Plaintiff must be an educational association; (2) the property must be owned and used exclusively for the purposes of such association; (3) the property involved must be less than 10 acres; (4) the property must be necessary for location and convenience of buildings; and (5) the property must not be used for profit.

*National Foundation v. Brookfield,* 65 Wis. 2d 263, 264–65, 222 N.W.2d 608, 609 (1974). The only issue is whether respondent is an educational organization which owns and uses the property in question exclusively for those purposes.

---

[3] Appellants point out that 1983 Senate Bill 509, which would have created an express exemption for nonprofit day-care centers within sec. 70.11, Stats., was defeated in the 1983–84 spring session. Failure of a bill to be enacted, however, does not constitute a legislative rejection of its purpose. *American Motors Corp. v. ILHR Dept.,* 101 Wis. 2d 337, 349, 305 N.W.2d 62, 68 (1981).

*International Foundation v. City of Brookfield,* 95
Wis. 2d 444, 290 N.W.2d 720 (Ct. App. 1980), *aff'd,*
100 Wis. 2d 66, 301 N.W.2d 175 (1981), created a two-
step test for resolving this issue: (1) The organization
and its property must be substantially and primarily
devoted to educational purposes, *International Founda-
tion* at 453, 290 N.W.2d at 724, citing *National Founda-
tion,* 65 Wis. 2d at 264–65, 222 N.W.2d at 609; and
(2) the organization's educational activities must be
"traditional," in the sense that their benefits are in the
general public interest and are available to an indefinite
class. *International Foundation* at 458–59, 290 N.W.2d
at 727.

## STANDARD OF REVIEW

To determine whether the *International Foundation*
criteria are satisfied "requires a careful analysis of the
facts concerning how the . . . property is actually being
used." *International Foundation* at 453, 290 N.W.2d
at 724, citing *National Foundation* at 265, 222 N.W.2d
at 610. The *International Foundation* standards of "sub-
stantially and primarily," "educational," "general public
interest," and "indefinite class" pose mixed questions of
fact and law. What the trial court has labeled its find-
ings 10 through 12, are actually mixed determinations
of fact and law. We owe no deference to a legal con-
clusion the trial court has denominated a fact. *Ander-
son v. Kojo,* 110 Wis. 2d 22, 27, 327 N.W.2d 195, 197
(Ct. App. 1982). We therefore owe no deference to the
conclusions contained in findings 10 through 12.

When we are confronted with mixed questions of law
and fact, two questions must be answered. *Department
of Revenue v. Exxon Corp.,* 90 Wis. 2d 700, 713, 281
N.W.2d 94, 101 (1979), *aff'd,* 447 U.S. 207 (1980).
The first is what are the facts; the second is whether the

established facts fulfill the legal standard. We apply the "clearly erroneous" test to the facts found by the trial court, *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983), and independently review the trial court's conclusions of law based on the facts which meet that test. *Ball v. District No. 4, Area Board*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

## PRIMARY USE AND PURPOSE

Respondent's amended articles of incorporation were introduced as evidence. The 1969 amendment declared respondent's purposes to be "exclusively . . . educational." However its declared object cannot be controlling. What it actually does must also be scrutinized. *Frank Lloyd Wright Foundation v. Wyoming*, 267 Wis. 599, 605, 66 N.W.2d 642, 646 (1954) ; *Catholic Woman's Club v. Green Bay*, 180 Wis. 102, 105, 192 N.W. 479, 480 (1923).

Appellants challenge the trial court's finding that respondent provides structured educational activities and contend that its actual function is to provide working parents and guardians with a facility for daytime housing and care of their preschool children. They allege that most of each day is devoted to noneducational purposes, such as physical care, supervision and feeding of the children.

The record, however, contains uncontradicted evidence that respondent makes daily use of a structured instructional curriculum and specific programs. These programs include language and cognitive development, music, nature study, basic math and social and physical development.[4] Respondent offered unchallenged expert

---

[4] Respondent's curriculum includes:

Peabody pre-reading language development program; music/rhythm sessions; alphabet/vocabulary development; "Learning

testimony of an educator from the Janesville school system that preschool children are capable of significant learning in these areas. The facts show that the programs are administered by respondent's staff of teachers, each of whom has had postsecondary education in early childhood training and has fulfilled state mandated in-service and continuing education requirements. Respondent's building contains a number of classrooms and "learning center" stations for the children's independent activities.

Appellants do not challenge these facts. They allege, however, that these educational activities are insignificant in proportion to the time and effort devoted to the mere custodial care of the children. They argue that exemption should not be granted because the educational use of respondent's property is incidental to its nonexempt activities. *International Foundation*, 95 Wis. 2d at 453, 290 N.W.2d at 724. Appellants offered the testimony of members of the city assessor's staff to the effect that the only activities they observed during their brief inspections of the center were napping, eating, diaper-changing and playing.

Respondent counters that these services, though necessary, are incidental to its primary educational purpose. The state requires day-care facilities to administer certain minimum levels of such care.[5] Respondent also provided expert testimony to the effect that children of this age group learn fundamental skills almost continuously, regardless of the activity engaged in.

---

centers," which encourage independent inquiry and activities; structured games and play periods; and exercise and motor skill development.

While these individual units are structured, respondent's overall daily curriculum is kept flexible in order to accommodate the varying attendance schedules of the children. The facts also show that most, if not all, of these programs were developed by early childhood education professionals.

[5] Wis. Adm. Code, secs. HSS 55.35 and 55.37.

Respondent has introduced substantial proof regarding the nature of its programs and activities. We find little countervailing evidence. We conclude that there was ample credible evidence to support the factual portion of the trial court's determinations: that respondent "has an educational purpose and function; that, although custodial services are provided, such services are incidental to the primary purpose of education"; and that respondent's property "is owned exclusively for the purposes of its educational functions." Insofar as those findings are factual, they are not clearly erroneous. Insofar as they are legal, we agree with the trial court and conclude that the first prong of the *International Foundation* test has been satisfied.

## *"TRADITIONAL" EDUCATION*

Appellants argue that, even if respondent's activities are educational, they do not constitute a "traditional" education as contemplated by the legislature. Appellants contend that the services provided by respondent are unlike the "traditional" educational activities customarily provided by government at taxpayers' expense. More is required by the *International Foundation* standard, they claim, than what occurs at the center.

Appellant misreads *International Foundation*. The legislature has chosen to lift the property tax burden from entities which fulfill a broad public, rather than private, interest. Such charitable activities "in the *traditional* sense . . . [include] caring for the sick, aged and infirm, *educating young people,* providing care for the poor, and operating facilities to promote the moral and educational welfare of youth institutions for religious education." *International Foundation,* 95 Wis.

2d at 454–55, 290 N.W.2d at 725. (Citations omitted.) (Emphasis added).[6]

Because this definition implies an issue of "what," not "how," we conclude the test is not one of how traditional or nontraditional respondent's teaching methods and educational activities are. *International Foundation* holds that, while the instruction provided must be "systematic," it may be "either formal or informal." *Id.* at 456, 290 N.W.2d at 726. "[E]ducational activities may not be restricted to . . . a formal school setting in ivy-covered halls." *Id.*

*International Foundation* does require that, in order to have its property exempted, an organization "must [offer] the type of education which benefits the general public directly and . . . in some way lessen[s] the burdens of government." *Id.* at 456, 290 N.W.2d at 726. Appellants argue that because the education provided by respondent is not the kind which taxpayers usually pay for, and government does not provide similar preschool education or day-care services, respondent's activities create no general public benefit and no significant reduction of government's burdens.

Respondent offered substantial unrefuted testimony to the contrary. The record shows that: the center's

---

[6] Appellants argue that, because respondent charges a fee for its services, its purposes cannot be charitable. *International Foundation, supra,* however, does not hold that charitable means "free." We also note that Justice Abrahamson, in her dissent to *International Foundation,* rejected the incorporation of a charitable element into the statutory terms "educational . . . associations" and "traditional educational activities." *International Foundation,* 100 Wis. 2d at 73, 301 N.W.2d at 178. She observed that sec. 70.11(4), Stats., grants tax exempt status to *both* educational associations and benevolent associations, thus apparently drawing a distinction between the two. The fact that respondent operates as a private enterprise—albeit a nonprofit one—is not disqualifying. We also note that respondent offers a number of reduced-fee and full "scholarships" to qualifying individuals.

programs and services are available without restriction to all families in the Janesville area; respondent offers speech therapy, and vision and hearing tests are performed regularly on all enrollees; respondent offers special programs tailored to both gifted children and those with learning disabilities; and that its programs are coordinated with the city's public schools to assure the subsequent proper placement of children with special needs.

Robert Cook, a Janesville public school principal, gave unrefuted testimony to the effect that children with diverse and challenging preschool experiences and education are better developed physically, socially and cognitively upon reaching grade school. Cook stated that this advantage translates into reduced burdens on the public schools by eliminating the need in many instances for counseling, testing, and speech therapy, and by increasing the likelihood of the pupils' academic success.[7]

The record shows ample credible evidence to support the factual portion of the trial court's determination that respondent "provides education within the traditional understanding of the term . . . ." Insofar as those findings are factual, they are not clearly erroneous. Insofar as they are legal, we conclude that the second prong of the *International Foundation* test has been satisfied.

## CONCLUSION

Having determined that the trial court's findings are not clearly erroneous and that the *International Founda-*

[7] Respondent also offered testimony that the local economy is directly benefited because day-care centers free parents to pursue employment. While not tied to the center's educational purposes and activities, this is an additional cognizable public benefit.

*tion* test has been satisfied, the conclusion that respondent's property is exempt under sec. 70.11(4), Stats., is inescapable.

*By the Court.*—Judgment affirmed.