BEAVER DAM COMMUNITY HOSPITALS, INC.,
Plaintiff-Respondent,

v.

CITY OF BEAVER DAM, Defendant-Appellant.†

Court of Appeals

*Nos. 2011AP1479, 2011AP2693.*
*Submitted on briefs April 30, 2012.—Decided August 23, 2012.*

2012 WI App 102

(Also reported in 822 N.W.2d 491.)

† Petition for Review filed 9-24-12.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Amie B. Trupke* of *Stafford Rosenbaum LLP*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Kevin L. Ferguson* of *Hall, Render, Killian, Heath & Lyman, P.C.*

A non-party brief was filed by *Margaret M. Derus* and *Don M. Millis* of *Reinhart Boerner Van Deuren S.C.*, for Wisconsin Association of Homes & Services for the Aging, Inc., Wisconsin Hospital Association and Rural Wisconsin Health Cooperative.

Before Lundsten, P.J., Sherman and Blanchard, JJ.

¶ 1. BLANCHARD, J.   This case concerns a dispute over interpretation of statutory language in a state property tax code exemption that was revised by the legislature in 2009. Respondent, Beaver Dam Community Hospitals, Inc. (the "hospital system"), asserts that its Eagle's Wings facility qualifies for the exemption as property owned and used by "a nonprofit entity that is operated as a facility that is licensed, certified, or registered under ch. 50" of the Wisconsin Statutes, pursuant to Wis. Stat. § 70.11(4)(a) (2009–10).[1] Appellant, the City of Beaver Dam, asserts that the facility is not entitled to the exemption, based on its reading of the statute.

¶ 2.   The circuit court, in two separate cases now consolidated on appeal, concluded that the exemption applies and granted summary judgment to the hospital system. The City appeals these decisions. Based on our interpretation of the statute's plain language, we agree with the circuit court that the property is exempt under the disputed provision. Accordingly, we affirm both judgments.

## BACKGROUND

¶ 3.   The hospital system is a federally tax-exempt nonstock, nonprofit corporation. The hospital system owns and operates the Eagle's Wings facility. There is no dispute that the facility qualifies as a community-based residential facility as defined in Wis. Stat. ch. 50 ("Chapter 50").[2] The hospital system charges market rates for use of this facility.

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

[2] Chapter 50 regulates hospitals, hospices, nursing homes, and certain other facilities, including community-based residential facilities such as Eagle's Wings. See Wis. Stat. §§ 50.03, 50.035, 50.32, and 50.90.

¶ 4.   The City of Beaver Dam assessed taxes on the real and personal property used for the facility for the 2009 and 2010 tax years. The hospital system contested the City's ability to tax these assets under the property tax code due to the exemption at issue by filing a Property Tax Exemption Request, which the City denied. The hospital system paid the 2009 taxes and then filed a Claim for Recovery of Unlawful Taxes with the City, which the City declined to grant. The hospital system then commenced an action in circuit court to recover taxes that it asserted were unlawfully assessed for the 2009 tax year. The parties went through a similar process for the 2010 tax year, producing the second legal action.

¶ 5.   The hospital system argued that the property is exempt under WIS. STAT. § 70.11(4)(a), as a Chapter 50 facility owned by a nonprofit entity. In response, the City argued that the exemption applies only to facilities that show benevolent use, and that the hospital system failed to show benevolent use by its facility. The circuit court agreed with the hospital system that the exemption does not require a showing of benevolence and granted summary judgment to the hospital system in both actions. The City now appeals in both.

## DISCUSSION

¶ 6.   This case presents an issue of first impression involving interpretation of the current version of WIS. STAT. § 70.11(4)(a), which exempts, in relevant part:

> Property owned and used exclusively by . . . churches or religious, educational or benevolent associations, *or by a nonprofit entity that is operated as a facility that is licensed, certified, or registered under ch. 50,* including benevolent nursing homes . . . but not exceeding 10

acres of land necessary for location and convenience of buildings while such property is not used for profit.

(Emphasis added.) The issue is whether § 70.11(4)(a) requires a Chapter 50 facility, here, Eagle's Wings, that is owned[3] by a nonprofit, here, the hospital system, to be used for benevolent activities in order to qualify for an exemption under the statute. For the following reasons, we conclude that the answer is no. As a result, we do not reach the dispute between the parties about whether the hospital system has shown that Eagle's Wings is benevolent.[4]

¶ 7. Issues of statutory interpretation are subject to de novo review. *Martine v. Williams*, 2011 WI App 68, ¶ 10, 333 Wis. 2d 203, 799 N.W.2d 449. In interpreting statutes, the court's purpose is to determine what the legislature intended in drafting the statute. *State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1997). It is assumed that the statutory language expresses the legislature's intent. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633,

---

[3] For the purpose of brevity, we use the word "owned" in the remainder of this opinion as a shorthand for "owned and used exclusively." There is no dispute in this case as to "used exclusively."

[4] For reasons we explain in the course of the opinion, we do not consider whether the definition of "benevolent activities" applies to Eagle's Wings. However, for general context we note that " '[b]enevolent' activities are defined [for purposes of tax exemption] as those that benefit the public and, 'to some extent at least, relieve the state from expense.' " *University of Wis. Med. Found., Inc. v. City of Madison*, 2003 WI App 204, ¶ 21, 267 Wis. 2d 504, 671 N.W.2d 292 (quoting *Methodist Episcopal Church Baraca Club v. City of Madison*, 167 Wis. 207, 210, 167 N.W. 258 (1918)).

681 N.W.2d 110. If a reading of the statutory language " 'yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.' " *Id.*, ¶ 46 (citation omitted); *see also Bruno v. Milwaukee County*, 2003 WI 28, ¶ 22, 260 Wis. 2d 633, 660 N.W.2d 656 (If the meaning of the words supports only one reasonable interpretation, the language is unambiguous.). In deciding whether a statute is ambiguous, the court construes non-technical words according to their "common and approved usage." Wis. Stat. § 990.01(1). The fact that the parties disagree regarding the meaning of a statute does not make the statute ambiguous. *Lincoln Sav. Bank S.A. v. DOR*, 215 Wis. 2d 430, 441–42, 573 N.W.2d 522 (1998).

¶ 8.   Although plain meaning analysis primarily focuses on the words and phrases in disputed portions of statutes, courts also consider the context represented by the entire statute. *Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, ¶ 12, 293 Wis. 2d 123, 717 N.W.2d 258. Statutory history, which involves comparison of the statute with its prior versions, is also a part of plain language analysis. *Richards v. Badger Mut. Ins. Co.*, 2008 WI 52, ¶ 22, 309 Wis. 2d 541, 749 N.W.2d 581.

¶ 9.   For reasons we now explain, applying these statutory interpretation standards to the disputed statutory language, we conclude that the statute unambiguously allows an exemption for any Chapter 50 facility owned by a nonprofit entity, and therefore the exemption applies here.

¶ 10.   The City does not dispute that the clause referencing Chapter 50 facilities, if read in isolation

without considering the "including" clause referencing "benevolent nursing homes" that immediately follows, would mean that a nonprofit Chapter 50 facility falls within the exemption. This initial clause is part of a list of categories linked by the word "or." *See* Wis. Stat. § 70.11(4)(a) ("Property owned and used exclusively by educational institutions . . .; *or* by churches or religious, educational or benevolent associations, *or by a nonprofit entity that is operated as a facility that is licensed, certified, or registered under ch. 50[.]*") (emphasis added). The ordinary meaning of "or" is disjunctive, meaning that a category that is included in a list of categories linked by the term "or" is one alternative choice. *See Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 638–39, 586 N.W.2d 863 (1998). It follows that, at least absent the "including" clause, all Chapter 50 facilities owned by nonprofits are eligible for the exemption at issue.

¶ 11.  The dispute focuses on the significance of the "including" clause. The hospital system argues that this clause only clarifies that benevolent nursing homes are included in the exemption, and that the clause cannot be read to limit the exemption. The City argues, in contrast, that the clause could be reasonably interpreted to indicate that all Chapter 50 facilities must be "benevolent" in order to qualify for the exemption. The City does not argue that the circuit court's and hospital system's interpretation of the statute is unreasonable. Rather, the City argues that its interpretation is also reasonable. Therefore, the City argues, the exemption in the statute is ambiguous and must be construed in favor of taxation.

¶ 12.  For the following reasons, we agree with the hospital system that the City's interpretation is not supported by the language of the statute and conclude

that the only reasonable interpretation, consistent with the text of the statute, is that "a nonprofit entity that is operated as a facility that is licensed, certified, or registered under ch. 50" is eligible for the exemption, whether or not the facility is benevolent. *See* WIS. STAT. § 70.11(4)(a).

¶ 13.  The word "benevolent," found within the clause "including benevolent nursing homes," clearly modifies "nursing homes"; it does not modify "facility." "Facility" appears in a separate clause within the sentence. There is nothing ambiguous in this construction. To interpret the clause referring to Chapter 50 facilities as meaning only benevolent Chapter 50 facilities, as the City does, one would expect the statute to read:   " . . . that is operated as a *benevolent* facility that is licensed, certified, or registered under ch. 50 . . . ." However, instead of " . . . operated as a *benevolent* facility . . .," the statute states "operated as a facility . . . ." The plain meaning of the initial clause at issue, "or by a nonprofit entity that is operated as a facility that is licensed, certified, or registered under ch. 50," is that it refers to both benevolent and non-benevolent facilities.

¶ 14.  In effect, the City argues that it would be reasonable to use the "including" clause as a clause of limitation or exclusion. However, our supreme court has repeatedly held that "include" is a term of illustration or inclusion, not one of limitation or exclusion, and we see no reason to depart from this general rule here. *See Hirschhorn v. Auto-Owners Ins. Co.*, 2012 WI 20, ¶ 36, 338 Wis. 2d 761, 809 N.W.2d 529; *Weber v. Town of Saukville*, 209 Wis. 2d 214, 226, 562 N.W.2d 412 (1997); *see also Dunphy Boat Corp. v. Wisconsin Emp't Relations Bd.*, 267 Wis. 316, 322, 64 N.W.2d 866 (1954) (holding that the statutory construction rule "expressio unius est exclusio alterius," meaning, the express men-

286

tion of one thing excludes all others, is inapplicable to the contents of an "including" clause). Consistent with the general rule as stated by our supreme court, BLACK'S LAW DICTIONARY explains: "The participle *including* typically indicates a partial list[, such as ']the plaintiff asserted five tort claims, including slander and libel.['] But some drafters use phrases such as *including without limitation* and *including but not limited to*—which mean the same thing." BLACK'S LAW DICTIONARY 831 (9th ed. 2009) (emphasis in original).

¶ 15.   Thus we conclude that the clause "including benevolent nursing homes" in WIS. STAT. § 70.11(4)(a) is not reasonably interpreted to mean that only benevolent Chapter 50 institutions qualify for the exemption. The clause "including benevolent nursing homes" means the same thing as "including, but not limited to, benevolent nursing homes."

¶ 16.   Nothing about the broader context of the statutory language changes our interpretation. On the contrary, that language shows that the legislature knew how to require expressly that a given category of entity be "benevolent," by inserting the word "benevolent" in front of that category, for example when listing "benevolent associations" instead of just "associations." Thus, the context of the full statute makes it even more clear that the reference to Chapter 50 facilities is not limited to benevolent Chapter 50 facilities.

¶ 17.   Finally, because the City apparently views the previous version of the statute as supporting its interpretation of the current version, we will compare the previous version with the current version. We disagree that the previous version supports the City; if anything, it further supports a plain-meaning interpretation of the current version of the statute to mean that

Chapter 50 organizations need not be benevolent to qualify for the exemption. The previous version of the statute stated in part:

> Property owned and used exclusively by educational institutions offering regular courses 6 months in the year; or by churches or religious, educational *or benevolent associations, including benevolent nursing homes and retirement homes for the aged* but not including an organization that is organized under s. 185.981 or ch. 611, 613 or 614 . . . .

WIS. STAT. § 70.11(4) (2007–08) (emphasis added). The present statute, as we have indicated, states:

> Property owned and used exclusively by educational institutions offering regular courses 6 months in the year; or by churches or religious, educational *or benevolent associations,* or by a nonprofit entity that is operated as a facility that is licensed, certified, or registered under ch. 50, *including benevolent nursing homes* but not including an organization that is organized under s. 185.981 or ch. 611, 613 or 614 . . . .

WIS. STAT. § 70.11(4)(a) (emphasis added). The addition of the category of Chapter 50 facilities, owned by nonprofit entities, on its face appears to reflect the intent to expand the exemption to cover a broad new category of entities not previously covered. Because benevolent Chapter 50 facilities operated by nonprofit entities would have been expected to usually, if not always, have been covered by the category of "benevolent associations"[5] already in the previous version of the statute, it would be unreasonable to interpret the

---

[5] "Association," when used in the property tax statutes, is a generic term used to mean both incorporated and unincorporated organizations, *see St. John's Military Acad. v. Edwards,* 143 Wis. 551, 555–56, 128 N.W. 113 (1910), formed by any two

288

current version of the statute as adding a category solely to cover these already-included entities. Stated another way, if the intent were simply to clarify what the statute already covered, the wording might be something like, "educational or benevolent associations, including a nonprofit entity that is operated as a facility that is licensed, certified, or registered under ch. 50."

¶ 18.  The City makes seven other arguments in support of its interpretation or as grounds to conclude that the statute is ambiguous. For the reasons that follow, none of the arguments persuades us.

■■

¶ 19.  First, the City refers to the surplusage canon of statutory interpretation. This canon requires a court to give effect to every word written by the legislature if possible, such that no words are superfluous. *Klemm v. American Transmission Co.*, 2011 WI 37, ¶ 18 n.10, 333 Wis. 2d 580, 798 N.W.2d 223. The City argues that to interpret the "including" clause as illustrative would be to render the word "benevolent," or the phrase "benevolent nursing homes" in that clause, superfluous. This is not so. The "including" clause merely clarifies that benevolent nursing homes remain within the exempt categories.

¶ 20.  Significantly, the Wisconsin Supreme Court made a similar point in interpreting a previous version of the clause, "including benevolent nursing homes and retirement homes for the aged." *See Milwaukee Protestant Home for the Aged v. City of Milwaukee*, 41 Wis. 2d 284, 292–93 & n.4, 164 N.W.2d 289 (1969). In *Milwau-*

or more persons, *see Green Scapular Crusade, Inc. v. Town of Palmyra*, 118 Wis. 2d 135, 138, 345 N.W.2d 523 (Ct. App. 1984); *see also Deutsches Land, Inc. v. City of Glendale*, 225 Wis. 2d 70, 81–83, 591 N.W.2d 583 (1999) (using "benevolent organization" interchangeably with "benevolent association").

*kee Protestant*, the court held that this clause "did not change the existing law as to retirement homes for the aged. It merely clarified the legislative intent . . . ." *Id.* at 293. This is the standard function of an "including" clause. Our interpretation gives full effect to the clause "including benevolent nursing homes": its apparent intended effect is to resolve any potential doubt as to the status of benevolent nursing homes, not to create doubt as to the status of other facilities.

¶ 21.   Second, the City cites case law, namely *Deutsches Land, Inc. v. City of Glendale*, 225 Wis. 2d 70, 591 N.W.2d 583 (1999), and *University of Wisconsin Medical Foundation, Inc. v. City of Madison*, 2003 WI App 204, 267 Wis. 2d 504, 671 N.W.2d 292, indicating that organizations must show benevolence to qualify for an exemption under WIS. STAT. § 70.11(4). However, this case law is not on point because it interprets the previous version of the statute, which, as indicated above, did not include the current language referring to Chapter 50 facilities.

¶ 22.   WISCONSIN STAT. § 70.11(4)(a) was created by 2009 Wis. Act 28 to replace WIS. STAT. § 70.11(4) (2007–08).[6] The case law that the City cites to show a benevolence requirement dates from before this change. This case law interprets the phrase "benevolent associations," and holds that entities must show benevolent use to qualify for the exemption as benevolent associations. "[The supreme court has] on prior occasions stated that, to qualify for a total exemption under WIS. STAT. § 70.11(4), an organization must show three facts:   (1) that it is a benevolent organization, (2) that it owns and exclusively uses the property, and (3) that it

---

[6] For the text of the section before and after this change, see *supra,* ¶ 17.

uses the property for exempt purposes." *Deutsches Land*, 225 Wis. 2d at 81–82 (citing *Milwaukee Protestant*, 41 Wis. 2d at 293). Although this list of criteria might appear to apply to all organizations seeking an exemption under the current section, *Milwaukee Protestant* makes clear that this list was created to evaluate the claim of an organization to qualify for the "benevolent associations" exemption.

> In order for a retirement home for the aged or a nursing home or a hospital to qualify for exempt status under sec. 70.11, Stats., " . . . it must appear that, (1) appellant is a benevolent association; (2) the personal property is used exclusively for the purposes of such association; [and] (3) the real and personal property is not used for pecuniary profit."

*Milwaukee Protestant*, 41 Wis. 2d at 293.[7]

¶ 23.  Other categories in the same section did not have to show benevolent use. For example:

> To qualify its property as exempt under sec. 70.11(4), Stats., respondent must show that it is a nonprofit organization
>
>> substantially and primarily devoted to educational purposes. Five statutory tests must be passed: (1) Plaintiff must be an educational association; (2) the property must be owned and used exclusively for the purposes of such association; (3) the property involved must be less than [ten] acres; (4) the property must be necessary for location and convenience of buildings; and (5) the property must not be used for profit.

*Janesville Cmty. Day Care Ctr., Inc. v. Spoden*, 126 Wis. 2d 231, 235, 376 N.W.2d 78 (Ct. App. 1985) (cita-

---

[7] *See also University of Wis. Med. Found.*, 267 Wis. 2d 504, ¶¶ 18–20 (citing *Deutsches Land*) (referring specifically to "benevolent associations" in articulating a test requiring benevolence).

tion omitted). The court declined to impose a benevolence requirement on an educational association that met these criteria, apparently because the statute listed "educational associations" as a distinct category from "benevolent associations." *See id.* at 240 n. 6.

¶ 24. Following the statutory revisions in 2009, Chapter 50 facilities owned by nonprofits are now a distinct exempt category within the statute. As we have explained, the reason that nursing homes and retirement homes were held to a benevolence requirement in cases interpreting the previous version of the statute is that, under the language in that version, such homes could be exempt only as a subset of "benevolent associations."

■

¶ 25. Third, the City argues that the construction we now adopt does not take into account the rule that the statute must be construed in favor of taxation, per WIS. STAT. § 70.109. This statute states that "[e]xemptions under this chapter shall be strictly construed in every instance with a presumption that the property in question is taxable, and the burden of proof is on the person who claims the exemption." *Id.* Thus, tax exemptions must be explicit, not merely implicit, in the plain meaning of the statute. *See United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶ 13, 302 Wis. 2d 245, 733 N.W.2d 322. However, the requirement that we strictly construe an exemption in favor of taxation does not assist the City here because we have already concluded that the City's interpretation is unreasonable.

¶ 26. Fourth, the City makes a minimally developed argument that the Department of Revenue's PROPERTY ASSESSMENT MANUAL indicates a benevolence requirement, and that the MANUAL is entitled to defer-

ence. The applicable version of the MANUAL that the City cites lists a benevolence requirement for nursing homes, but not for other types of Chapter 50 facilities, such as the community-based residential facility at issue here. WISCONSIN PROPERTY ASSESSMENT MANUAL at 22–15 (Rev. 2/10). Absent further explanation, the City's MANUAL-based argument is not persuasive.

¶ 27.   Fifth, the City argues that the title of the statutory subsection at issue implies a benevolence requirement. The title is: "Educational, Religious and Benevolent Institutions; Women's Clubs; Historical Societies; Fraternities; Libraries." This argument fails because "the title of a statute is not part of the law," and looking to the title to clarify the content of a statute is appropriate only when the content is ambiguous on its face, which we have explained is not the case here. *Pulsfus Poultry Farms, Inc. v. Town of Leeds*, 149 Wis. 2d 797, 805–06, 440 N.W.2d 329 (1989); *see also* WIS. STAT. § 990.001(6).

¶ 28.   Sixth, the City argues that the apparent absence of supportive legislative history undercuts our interpretation of the statute, reasoning that a significant change in the meaning of a statute would ordinarily be accompanied by legislative documents explaining the need for such a change. Putting aside the potential merits of this type of absence-of-legislative-history argument, the argument cannot stand here in light of our conclusion that the meaning of the statute is plain based on the statutory language. Legislative history, including the lack of explanation for a change, is an "extrinsic" source of statutory interpretation and, therefore, generally used to determine a statute's meaning only if the text is ambiguous. *See Kalal*, 271

Wis. 2d 633, ¶¶ 50–51.[8] Here, as we have said, the statutory language is not ambiguous, and the City provides no authority suggesting that we should nonetheless consider legislative history.

■

¶ 29.  Finally, the City argues that the interpretation allowing an exemption for all Chapter 50 facilities owned by nonprofits is bad public policy, or inconsistent with policy goals expressed in various contexts. The City argues, for example, that this interpretation puts for-profit Chapter 50 facilities at a competitive disadvantage, contrary to the state's public policy to promote competition in all industries. Although the hospital system responds with its side of these policy arguments, we will not attempt to decide these questions. Evaluating the public policy implications of an unambiguous statute is beyond the court's role. The legislature established in the statute that Chapter 50 facilities owned by nonprofit entities are eligible for a statutory tax exemption, regardless whether they are benevolent. The wisdom or broader implications of this policy choice was, and remains, for the legislature to determine. *See Progressive N. Ins. Co. v. Romanshek*, 2005 WI 67, ¶ 60, 281 Wis. 2d 300, 697 N.W.2d 417.

---

[8] As already noted, statutory history involves evaluation of the texts of prior versions of the statute and can contribute to plain meaning analysis. In contrast, legislative history refers to "extrinsic" documentation of the process of enacting a statute. *See Richards v. Badger Mut. Ins. Co.*, 2008 WI 52, ¶ 22, 309 Wis. 2d 541, 749 N.W.2d 581; *see also State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 52 n. 9, 271 Wis. 2d 633, 681 N.W.2d 110.

## CONCLUSION

¶ 30.  For these reasons, the circuit court did not err in applying the property tax exemption in WIS. STAT. § 70.11(4)(a). The court's judgments are therefore affirmed.

*By the Court.*—Judgments affirmed.