IN THE MATTER OF THE APPEAL OF CHAPEL HILL DAY CARE CENTER, INC., FROM THE DENIAL OF PROPERTY EXEMPTION BY THE ORANGE COUNTY BOARD OF EQUALIZATION AND REVIEW FOR TAX YEAR 1997

No. COA00-998

(Filed 17 July 2001)

**1. Taxation— daycare center—ad valorem exemption— wholly and exclusively educational standard—custodial services**

The Property Tax Commission did not err by concluding that petitioner daycare center was not entitled to an exemption from property taxation under N.C.G.S. § 105-278.4(a)(4)'s wholly and exclusively educational standard for the 1997 tax year based on the fact that the educational services are merely incidental to its custodial services, because: (1) the daycare did not assign error to the Tax Commission's finding that it was not a "qualified owner" under the statute; (2) the daycare's accreditation is further evidence that the daycare is custodial in nature since the accrediting body does not accredit educational facilities; and (3) while some of the daycare's activities serve to educate the children enrolled there, it is not enough to trigger tax exempt status.

**2. Taxation— daycare center—ad valorem exemption—equal protection—preferential treatment for church-affiliated daycare centers**

The Property Tax Commission's conclusion that petitioner daycare center is not entitled to exemption from ad valorem taxation does not violate the daycare's equal protection rights based on the alleged preferential tax treatment to church-affiliated daycare centers while non-affiliated daycare centers are denied favorable tax exemptions, because: (1) all of the fifty states have similar tax exemptions for property used for religious purposes; and (2) the procedures in N.C.G.S. §§ 105-278.3 and 105-289.4 were followed so that there were no constitutional violations.

Appeal by petitioner from final decision entered 13 April 2000 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 23 May 2001.

IN RE APPEAL OF CHAPEL HILL DAY CARE CTR., INC.

[144 N.C. App. 649 (2001)]

*Northen Blue, LLP, by David M. Rooks, III, for petitioner appellant.*

*Coleman, Gledhill & Hargrave, P.C., by Leigh A. Peek, for respondent appellee.*

McCULLOUGH, Judge.

The Chapel Hill Day Care Center (CHDCC) was formed in 1967 as a joint project between the Chapel Hill Service League and the United Church of Christ in Chapel Hill, North Carolina. Since its inception, it has operated as a nonprofit day care and preschool facility. CHDCC was initially located in the United Church of Christ's educational building. CHDCC paid the cost of utilities, and received $3,360.00 per year from the Church for tuition assistance purposes.

CHDCC is accredited by the National Association for the Education of Young Children (NAEYC), whose stated purpose is "to improve the quality of care and education provided for young children in group programs in the United States." To receive accreditation, CHDCC developed written lesson plans and structured activities for the children. CHDCC presently provides day care for eighty-eight children who range in age from three weeks to five years. It operates from 7:30 a.m. to 5:45 p.m., Monday through Friday. Tuition ranges from $630.00 to $900.00 based on the child's age; several of the children receive a tuition subsidy to defray expenses.

From 1967 to 1995, CHDCC's Board of Directors was partially made up of members of the United Church of Christ. In 1995, CHDCC moved out of the church building and into the old Chapel Hill town library building, where it remained for approximately one year. All ties between the Church and CHDCC were dissolved at that time. During the 1996 tax year, CHDCC voluntarily listed its personal property and paid taxes on both real and personal property. In 1997, when CHDCC relocated to its current location in the Southern Village neighborhood, it again listed its personal property and paid real and personal property taxes.

The Orange County Assessor is required to perform a yearly audit of nonprofit day care centers located in churches in Orange County and determine whether any of the facilities qualify for tax exemptions. In 1997, Orange County Assessor John Smith visited several nonprofit day care centers located in churches and reported that the main purpose of each center's operation was part of the religious mis-

sion of the church in which it was housed, thereby entitling it to a tax exemption as a religious organization. Mr. Smith also visited CHDCC to assess its tax status. After examining the facility, Mr. Smith opined that CHDCC was primarily custodial in nature and did not operate as a formal educational center. Based on his analysis, he found that CHDCC was not entitled to a tax exemption under N.C. Gen. Stat. § 105-278.4 (1999), because it was "not wholly and exclusively educational." Past records revealed that CHDCC had never received an exemption from tax payments under any provisions of the North Carolina General Statutes.

CHDCC applied for an exemption from property taxation under N.C. Gen. Stat. § 105-278.4 for the 1997 tax year, maintaining that its primary function was educational, not custodial. The Orange County Board of Equalization and Review denied CHDCC's application on 30 June 1997. CHDCC then requested a hearing before the North Carolina Property Tax Commission ("Tax Commission") on 13 August 1998. Mr. Smith, the Orange County Assessor, was among those called to testify before the Tax Commission at the 24 February 2000 hearing. When asked about his impressions following his audit of CHDCC, Mr. Smith stated that

> . . . I do believe that it's true that children learn at an incredible rate, they are constantly learning, that they are like sponges; however, I don't believe that that is something that can be used by day care centers to qualify them as being wholly and exclusively educational.
>
> I did observe. I think they are very loving. They provide a great deal of love and care. I think they are primarily custodial and that they do provide custodial child care. Education is incidental to what they do, to their purpose.
>
> I did not observe, related particularly to the children under one year old—one year of age, anything that I would consider to be formal education. So, I cannot say that I observed anything related to the younger children that appeared to be educational.

The Tax Commission determined that CHDCC did not meet N.C. Gen. Stat. § 105-278.4(a)(4)'s "[w]holly and exclusively" educational standard, and concluded that the Center had to pay taxes as a regular taxpayer. An order formally denying CHDCC's application for tax exemption was entered on 13 April 2000. CHDCC appealed.

CHDCC argues that the Tax Commission erred in concluding (I) that the educational activities the Center provides are merely incidental to its custodial services; (II) that the educational services the Center provides are not sufficient to meet the "[w]holly and exclusively" educational standard described in N.C. Gen. Stat. § 105-278.4(a)(4); and (III) that CHDCC is not entitled to exemption from *ad valorem* taxation while independent, nonprofit day care centers located in church buildings are entitled to such an exemption. For the reasons set forth, we disagree with CHDCC and affirm the decision of the North Carolina Property Tax Commission.

## Educational v. Custodial Purpose

We first note that

[t]he standard of review of decisions of the Property Tax Commission is as follows: the appellate court is to decide all relevant questions of law and interpret constitutional and statutory provisions to determine whether the decision of the Commission is in violation of constitutional provisions; in excess of statutory authority or jurisdiction of the Commission; made upon unlawful proceedings; affected by other errors of law; unsupported by competent, material and substantial evidence in view of the entire record as submitted; or arbitrary and capricious. The court shall review the whole record.

*In Re Appeal of Valley Proteins, Inc.*, 128 N.C. App. 151, 153, 494 S.E.2d 111, 112 (1997).

N.C. Gen. Stat. § 105-278.4 sets out the requirements an establishment must meet to qualify for educational tax exempt status. Subsection (a) states

(a) Buildings, the land they actually occupy, and additional land reasonably necessary for the convenient use of any such building shall be exempted from taxation if:

1. Owned by an educational institution (including a university, college, school, seminary, academy, industrial school, public library, museum, and similar institution);

2. The owner is not organized or operated for profit and no officer, shareholder, member, or employee of the owner or any other person is entitled to receive pecuniary profit from the owner's operations except reasonable compensation for services;

IN RE APPEAL OF CHAPEL HILL DAY CARE CTR., INC. .

[144 N.C. App. 649 (2001)]

3. Of a kind commonly employed in the performance of those activities naturally and properly incident to the operation of an educational institution such as the owner; and

4. Wholly and exclusively used for educational purposes by the owner or occupied gratuitously by another nonprofit educational institution (as defined herein) and wholly and exclusively used by the occupant for nonprofit educational purposes.

Application of the statutory tax exemption turns on whether CHDCC is "[w]holly and exclusively" educational in nature. When presented with the question, the Tax Commission determined that CHDCC "is not a qualifying owner within the meaning of the provisions of G.S. § 105-278.4 since [CHDCC] provides primarily custodial care services to the young children enrolled at its day care facility[,]" and denied CHDCC's request for an educational facility tax exemption.

[1] CHDCC contends that it is primarily educational in nature and urges this Court to consider its custodial services as merely incidental to its educational purpose. Ms. Pam Anderson, CHDCC's Director, testified at the Tax Commission hearing and described the daily activities engaged in by each child, such as discovery learning, group time, outdoor play, mealtime, rest time, and so forth. She maintained that these activities, taken in the aggregate, were educational in nature. Ms. Anderson admitted, however, that the Center did not keep traditional school hours, did not assign homework or require make-up work if a child was absent for any period of time, and did not issue report cards of any type.

Ms. Anderson further testified that CHDCC has always developed age-appropriate lesson plans for each child; the lessons are specific to each child's social, emotional, gross motor, fine motor, and cognitive development. Each child's progress is chronicled in a developmental profile, which is reviewed by CHDCC's staff and the child's parents on a regular basis. Ms. Anderson also described the credentials of the twenty teachers at CHDCC. She stated that

[b]ecause we recognize that the quality of education that we're able to provide for the children is largely related to the educational background of the teachers, we have 20 teachers. Of those 20, we have one with a master's of education, we have four with a bachelor's degree in child development—child develop-

ment or education. We have teachers that have bachelor's degrees in other areas such as social sciences.

We have a program coordinator with a four-year degree in child development, an assistant director with an associate degree in early childhood education, two teachers with associate's degrees in early childhood education, and the remainder of the staff either have the North Carolina child care credential or are working toward their associate degrees or four-year degrees.

CHDCC also tendered Dr. Richard Clifford as an expert in early childhood education. Dr. Clifford is the Co-Director of the National Center for Early Development and Learning at the Frank Porter Graham Child Development Center in Chapel Hill, North Carolina, and has specialized in early childhood development and learning for over thirty years. Dr. Clifford testified that children are constantly learning, and that the activities they engaged in while at CHDCC were educational pursuits. Dr. Clifford opined that CHDCC "absolutely" met the definition of "educational purposes" in N.C. Gen. Stat. § 105-278.4(a)(4). He also stated that the accreditation process separates those centers that educate children from those centers which are less education-oriented, so that CHDCC's accreditation by the NAEYC was further proof of its educational focus. Finally, Dr. Clifford stated that the varied programs for different age groups within CHDCC indicated that the Center was educational, as different ages are taught different things in different ways.

From a legal standpoint, CHDCC argues that we should follow the reasoning of *Janesville Community Day Care Center, Inc. v. Spoden*, 126 Wis. 2d 231, 376 N.W.2d 78 (1985). In *Janesville*, a licensed child day care facility requested tax exemption status by claiming that it was an educational association under Wisconsin Stat. § 70.11(4) (1984). *Janesville*, 126 Wis. 2d at 232, 376 N.W.2d at 79-80. The City of Janesville and the City Tax Assessor argued that the day care was primarily custodial, and that "the educational part of [the day care] program [was] too small a fraction of its activities to be a primary function." *Id.* at 235, 376 N.W.2d at 80.

Although the Wisconsin Legislature had not carved out a tax exemption for day care facilities, the *Janesville* court found that the day care had a structured instructional curriculum and specific programs. *Id.* at 237, 376 N.W.2d at 82. The *Janesville* court then agreed with the trial court that the day care "provid[ed] education within the traditional understanding of the term[,]" and granted the day care a

tax exemption because it qualified as an educational association. *Id.* at 241-42, 376 N.W.2d at 83.

While *Janesville* is factually similar to CHDCC's case, we note that its reasoning is not binding on this Court. Moreover, the relevant statutory provisions are clearly distinguishable. The *Janesville* court explained that "[t]o qualify its property as exempt under sec. 70.11(4), Stats., respondent must show that it is a nonprofit organization substantially and primarily devoted to educational purposes." *Id.* at 235, 376 N.W.2d at 81. *See also* Wisconsin Stat. § 70.11(4); and *International Foundation v. City of Brookfield*, 95 Wis. 2d 444, 290 N.W.2d 720 (1980), *aff'd*, 100 Wis. 2d 66, 301 N.W.2d 175 (1981). N.C. Gen. Stat. § 105-278.4(a)(4) is more restrictive; entities must be "[w]holly and exclusively used for educational purposes" to qualify for a tax exemption. Based on these obviously different statutory standards and the fact that Wisconsin law is not binding upon this Court, we find that *Janesville* is not dispositive of CHDCC's case.

The County correctly states that N.C. Gen. Stat. § 105-278.4 does not specifically mention an exemption for custodial institutions such as day care facilities. The County therefore urges this Court to find that CHDCC does not qualify as any of the educational entities mentioned in N.C. Gen. Stat. § 105-278.4(a)(1). We agree, and note that CHDCC did not assign error to the Tax Commission's finding that it was not a "qualified owner" under the statute. We are also persuaded by the County's argument that CHDCC's accreditation by the NAEYC is further evidence that CHDCC is custodial in nature, as the NAEYC does not accredit educational facilities.

N.C. Gen. Stat. § 105-278.4(a)(4) requires an institution to have a "[w]holly and exclusively" educational purpose in order to trigger a tax exemption. While we agree that some of CHDCC's activities serve to educate the children enrolled there, this is not enough to trigger tax exempt status under N.C. Gen. Stat. § 105-278.4. The Commission's findings of fact and conclusions of law are supported by competent evidence and are neither arbitrary nor capricious. CHDCC's first assignment of error is overruled.

### N.C. Gen. Stat. § 105-278.4(a)(4)'s "[w]holly and exclusively" educational standard

We initially note that statutory interpretation of the phrase "[w]holly and exclusively used for educational purposes" is a question of law reserved for this Court's determination. *See Valley*

*Proteins,* 128 N.C. App. at 153, 494 S.E.2d at 112. CHDCC argues that the activities it provides for the children meet the "[w]holly and exclusively" educational standard set forth in N.C. Gen. Stat. § 105-278.4(a)(4), because the daily custodial care provided by the staff at CHDCC is merely incidental to the Center's overall educational purpose. In support of its argument, CHDCC again references portions of Dr. Clifford's testimony.

During the Tax Commission hearing, Dr. Clifford engaged in a discussion with members of the Tax Commission, who asked him which entities should qualify as educational facilities. Dr. Clifford made the following comments:

> [DR. CLIFFORD:] I see no difference in [CHDCC] than an elementary school. The largest provider of child care in North Carolina is the public schools. So, is a public school—if you use the definition of exclusive to say they can't do anything else, then no school would qualify under this definition in North Carolina.

> MS. SITTON: Or only the good ones would qualify.

> [DR. CLIFFORD:] No, no school. Every school provides child care for their—the children.

> . . . .

> MS. SITTON: So, every child care facility should qualify for this exemption?

> [DR. CLIFFORD:] That's my opinion.

To bolster Dr. Clifford's testimony, CHDCC also notes that "[w]hile our courts have consistently held that tax exemption statutes must be strictly construed against exemption, they have also held that such statutes should not be given a narrow or stingy construction." *In Re Wake Forest University,* 51 N.C. App. 516, 521, 277 S.E.2d 91, 94, *disc. review denied,* 303 N.C. 544, 281 S.E.2d 391 (1981) (citations omitted). CHDCC argues that following the strict letter of the law in this instance would directly contravene the Legislature's manifest purpose, which is to grant tax exemptions to facilities such as CHDCC. *See Valley Proteins,* 128 N.C. App. at 155, 494 S.E.2d at 114. CHDCC points to the individualized developmental profiles for each child, lesson plans, educational activities, teacher qualifications, and continuing education services the Center provides as proof that an educational purpose eclipses any incidental custodial role the Center plays, thus entitling it to tax exemption.

IN RE APPEAL OF CHAPEL HILL DAY CARE CTR., INC.

[144 N.C. App. 649 (2001)]

The County, on the other hand, maintains there is competent, material and substantial evidence that CHDCC is primarily custodial in nature. The County initially notes that the Wisconsin statute is less restrictive than the relevant North Carolina statute, N.C. Gen. Stat. § 105-278.4. The County also notes that the *Janesville* court made different findings of fact than the trial court did in this case. The Wisconsin trial court held that

11. Plaintiff provides education within the traditional understanding of the term and the property is owned exclusively for the purpose of its educational functions.

12. Plaintiff has an education purpose and function and although custodial services are provided, such services are incidental to the primary purpose of education.

Conversely, in the present case, the Tax Commission found that

5. *Taxpayer [CHDCC] provides custodial care and services for the 88 children enrolled at its day care facility* from the age of 3 weeks until they begin kindergarten, from the hours of 7:30 a.m. until 5:45 p.m. Tuition ranges from $900.00 per month for an infant to $630.00 per month for a 4-5 year old. Twelve children, currently enrolled at the day care, receive some type of tuition subsidy.

. . . .

11. *The care provided at Taxpayer's [CHDCC's] day care is for custodial care of the young children enrolled there and the day care is not wholly and exclusively educational.*

12. Taxpayer [CHDCC] has never received an exemption from paying personal property or real property taxes from the Orange County Assessor under any provision of the North Carolina General Statutes.

(Emphasis added.) The Tax Commission then concluded, as a matter of law, that

1. G.S. § 105-278.4 governs tax exemptions for real and personal property used for educational purposes. . . .

. . . .

2. Taxpayer is [] not a qualifying owner within the meaning of the provisions of G.S. § 105-278.4 since Taxpayer provides pri-

marily custodial care services to the young children enrolled at its day care facility.

3. The educational activities provided for the children at Taxpayer's day care are incidental to the custodial care services provided which are the primary purpose of this day care facility.

4. The educational activities provided for 3-week-old infants to 4-5 year old preschoolers do not constitute the level required by G.S. § 105-278.4, which requires that real and personal property used for educational purposes may be exempted if it is "wholly and exclusively used for educational purposes."

5. Taxpayer failed to establish by competent, material and substantial evidence that the subject day care facility is a qualifying institution as described in G.S. § 105-278.4.

There is ample evidence in the record from which the Tax Commission could conclude that CHDCC is not a traditional school and is not "[w]holly and exclusively used for educational purposes." The Center does not maintain regular school hours, does not assign homework or make-up work, and does not issue report cards. CHDCC's own witnesses repeatedly referred to the Center in terms of a custodial day care center: CHDCC's director, Ms. Anderson, referred to the Center's teachers as "child care providers" and Dr. Clifford referred to CHDCC as a "child care" center. Bearing in mind that our review is limited to deciding all relevant questions of law and determining whether the findings of fact and conclusions of law are supported by competent, material and substantial evidence, we cannot say that the Tax Commission's decision is arbitrary and capricious. Appellant's second assignment of error is overruled.

**Constitutional Considerations**

[2] Lastly, CHDCC argues the Tax Commission's conclusion that it is not entitled to exemption from *ad valorem* taxation violates its rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 19 of the North Carolina Constitution. Section 1 of the Fourteenth Amendment states that

[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor

IN RE APPEAL OF CHAPEL HILL DAY CARE CTR., INC.

[144 N.C. App. 649 (2001)]

shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Article I, Section 19 of the North Carolina Constitution provides that

> [n]o person shall be . . . deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.

CHDCC did not begin paying taxes until its affiliation with the United Church of Christ ended in 1995. CHDCC argues that the process engaged in by Orange County Assessor John Smith gave preferential tax treatment to church-affiliated day care centers while non-affiliated day care centers were denied favorable tax exemptions. At the Tax Commission hearing, Mr. Smith described the process he engaged in to determine an entity's tax status:

> [MR. SMITH:] Now, it's our opinion that in almost every case, the day care that's located in the church is a part of the church, is a part of the church mission. And all the day cares that are similarly located, that I have spoken with, tell me very strongly that they are a part of the church. Therefore, they are exempted as part of the church under the church application.
>
> . . . .
>
> [ORANGE COUNTY ATTORNEY:] When you denied the exemption for the Chapel Hill Day Care Center, did you treat the day care center any differently from any other similarly situated Orange County taxpayer?
>
> [MR. SMITH:] No.
>
> . . . .
>
> [CHDCC'S ATTORNEY:] Mr. Smith, let's assume—I think I understood you to say, and please correct me if I'm wrong, that if a day care center is in a church and is part of the mission of the church, then it is exempt from taxation.

IN RE APPEAL OF CHAPEL HILL DAY CARE CTR., INC.

[144 N.C. App. 649 (2001)]

[MR. SMITH:] Yes, that's my belief, that it is exempt and that it is a part of the church, it is a part of the church that goes about being the ambassador that the Bible says that it should be.

. . . .

If the day care is not part of the church mission, then it is not exempt.

CHDCC maintains that exemption from taxation is a form of preferential treatment that should not be granted based on religious affiliation, and points out that the Supreme Court invalidated N.C. Gen. Stat. § 105-275(32) (1997), because it gave preferential tax treatment to religious homes for the sick, aged and infirm. *See In re Springmoor, Inc.*, 348 N.C. 1, 498 S.E.2d 177 (1998). While this is true, we agree with the County's position that *Springmoor* severed N.C. Gen. Stat. § 105-275(32) from the rest of the statute and kept the remainder of the statute constitutionally intact.

Moreover, we find that N.C. Gen. Stat. § 105-278.3 (authorizing tax exemptions for real and personal property used for religious purposes) and N.C. Gen. Stat. § 105-278.4 (authorizing tax exemptions for real and personal property used for educational purposes) are constitutionally distinguishable from N.C. Gen. Stat. § 105-275(32). "Indeed, all of the fifty states have similar tax exemptions for property used for religious purposes. Such tax exemptions constitute an acceptable accommodation of religion, which has been called 'benevolent neutrality.' " *Springmoor*, 348 N.C. at 7, 498 S.E.2d at 181 (citations omitted). *See also Walz v. Tax Comm'n of N.Y.*, 397 U.S. 664, 25 L. Ed. 2d 697 (1970).

The County presented evidence that CHDCC was not treated any differently than other similarly situated Orange County taxpayers. The procedures and guidelines in N.C. Gen. Stat. § 105-278.3 and N.C. Gen. Stat. § 105-278.4 were followed; thus, there were no constitutional violations. CHDCC's final assignment of error is overruled.

The North Carolina Property Tax Commission's order denying CHDCC's application for tax exemption is hereby

Affirmed.

Judges WALKER and THOMAS concur.