IN MATTER OF THE APPEAL OF THE MAHARISHI SPIRITUAL CENTER OF AMERICA, 639 WHISPERING HILLS ROAD, SUITE 112, BOONE, NORTH CAROLINA 28607 FROM THE LISTING AND TAXATION OF THE HEREIN DESCRIBED PROPERTY BY WATAUGA COUNTY FOR 1999

No. COA01-644

(Filed 20 August 2002)

**1. Taxation— ad valorem—educational exemption—ownership**

The Property Tax Commission erred by determining that the Maharishi Spiritual Center did not meet the educational institution ownership requirement for a property tax exemption. N.C.G.S. § 105-278.4 does not require that an organization must meet formalities such as a degree, certification, or accreditation to be classified as an educational system, and the term "educational institution" easily accommodates the nature of the Spiritual Center's organization.

**2. Taxation— ad valorem—educational exemption—type of facilities**

The Property Tax Commission erred by concluding that the Maharishi Spiritual Center did not meet the requirement for an educational exemption from property taxes in that the facilities were not of a kind commonly employed in or naturally incident to the operation of an educational institution. There was evidence that universities set aside places for mediation and there was no evidence that the Spiritual Center's facilities are not the kind commonly employed by educational institutions.

IN RE APPEAL OF THE MAHARISHI SPIRITUAL CTR. OF AM.

[152 N.C. App. 269 (2002)]

### 3. Taxation— ad valorem—educational exemption—facilities wholly used for education

The Property Tax Commission erred by determining that the Maharishi Spiritual Center did not meet the requirements for an educational exemption from property taxes in that the facilities are not wholly and exclusively used for educational purposes because some members use their compounds primarily for group meditation. There was evidence that the Spiritual Center offers a variety of courses in short-term and long-term meditation, Vedic Science, and Sanskrit, that the meditation sessions involve specific instructions from teachers, that students practice their techniques, review their techniques, and discuss their progress with instructors, and that there was a transmission of information at all of the programs.

### 4. Taxation— ad valorem—educational exemption—school

The Property Tax Commission erred by determining that property used by a girl's school operated by a transcendental meditation organization was not entitled to an educational property tax exemption where the school's courses included math, science, physical education, and the arts, the school was in full compliance with state laws concerning private schools, parents are deemed to have met the compulsory education requirements by sending their children to the school, the school grants diplomas, and graduates have attended college.

Judge TYSON dissenting.

Appeal by taxpayer from final decision entered by North Carolina Property Tax Commission on 27 December 2000. Heard in the Court of Appeals 13 March 2002.

*Moore & Van Allen, PLLC, by Charles H. Mercer, Jr., John S. Hughes, and Reed J. Hollander, for taxpayer-appellant.*

*Parker, Poe, Adams & Bernstein, L.L.P., by Charles C. Meeker, Jason J. Kaus and Jeffery M. Hedrick, County Attorney, for Watauga County-appellee.*

WYNN, Judge.

The Maharishi Spiritual Center challenges the North Carolina Tax Commission's finding that pertinent real and personal property owned by the Spiritual Center is not entitled to an educational

exemption under N.C. Gen. Stat. § 105-278.4. Because we find that some of the Tax Commission's findings are not supported by substantial evidence in view of the entire record, we reverse and remand in part.

The Maharishi Spiritual Center operates as a North Carolina nonprofit corporation exempt from state corporate income and franchise tax, sales tax, and federal income tax as a Section 501(c)(3) nonprofit corporation. The articles of incorporation describe the Spiritual Center's corporate purposes to include providing a site for educational programs.

The Spiritual Center's real property consists of 61 parcels of land, totaling 550 acres in Watauga County. The real property is divided into two sections: (1) The western campus (men's campus) is used exclusively by men and contains a meditation hall, dining hall, a series of residential facilities and administrative offices; and (2) The eastern compound (women's campus) is used exclusively by women and also contains a meditation hall, and dining and residential facilities. In addition, the Heavenly Mountain Ideal Girls' School is located on the east campus. Two nonprofit corporations associated with the Spiritual Center also use the property: Maharishi Vedic Education Development Corporation, which is a Massachusetts nonprofit corporation that works with various schools and universities to develop and offer courses in Vedic education; and Maharishi Global Administration Through Natural Law, which is a California nonprofit corporation whose purpose includes promoting and establishing educational programs in Vedic Science, technology, and natural law. A for profit residential development called, Heavenly Mountain Resort, is located between the western and eastern sections but it is not owned by the Spiritual Center.

At the men's campus, 310 men participate in the long-term "Purusha" Program. The program includes a daily meditation session in the morning from 7:00 to 11:30, which includes transcendental meditation and advanced meditation programs. After lunch, they engage in fundraising or work for the nonprofit entities associated with the Spiritual Center; some teach shorter meditation courses. They gather for group meditation in the evening, they also attend educational presentations that are in-person or by videotape. Additionally, students read or study Vedic literature and have access to a Vedic library; receive instruction at least monthly from the Maharishi by teleconference; engage in discussions with professors from the Maharishi University of Management, a fully accredited uni-

IN RE APPEAL OF THE MAHARISHI SPIRITUAL CTR. OF AM.

[152 N.C. App. 269 (2002)]

versity; receive videotape instructions on Vedic science, a branch of Indian knowledge with roots in Sanskrit and Eastern literature; and take classes in Sanskrit and study it on their own. The Spiritual Center also offers short term courses for men, which may last a few days to a couple of weeks. These courses include group practice of meditation along with lectures from Vedic scholars and scientists.

The programs offered on the women's campus include the Mother Divine Program, which is administered by the Maharishi Global Administration Through Natural Law. The educational program for the women is similar to the men's Purusha program. The Center also offers shorter women's courses including courses for degree credit through the Maharishi University of Management and short term courses in meditation, diet and nutrition, and mother-daughter topics.

The programs are open to all applicants; and, students are provided with food, lodging and access to the facilities. Students pay a fixed tuition; however, they are also asked to raise $1,000 a month in funds to cover their room, board and costs of maintaining the Center. The Spiritual Center does not award formal diplomas or degrees.

The Heavenly Mountain Ideal Girls' School located on the East Campus is a fully accredited North Carolina non-public school, which is operated by Mother Divine and Maharishi Global Administration Through Natural Law. The school offers courses in grades 9 through 12, including, math, science, physical education and the arts. The school awards high school diplomas and some of the graduates have attended colleges and universities.

On 22 April 1999, the Watauga County Board of Equalization and Review denied the Spiritual Center's request for exemption from property taxes for 61 parcels of real estate and associated personal property. The Board also denied exemption for the Heavenly Mountain Ideal Girls' School and undeveloped property owned by the Spiritual Center. The Spiritual Center appealed to the Tax Commission. In its final decision, the Tax Commission made findings of fact and conclusions, and ruled that the Spiritual Center was not entitled to exemption from property taxes on educational, charitable or scientific grounds. The Spiritual Center appealed to this Court.

On appeal, our review of the decision by the Tax Commission is governed by N.C. Gen. Stat. § 105-345.2 (2001), which provides in pertinent part:

**IN RE APPEAL OF THE MAHARISHI SPIRITUAL CTR. OF AM.**

[152 N.C. App. 269 (2002)]

On appeal the court shall review the record and the exceptions and assignments of error in accordance with the rules of appellate procedure, and any alleged irregularities in procedures before the Property Tax Commission, not shown in the record, shall be considered under the rules of appellate procedure.

(b) So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions; or;

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

Thus, we review the Tax Commission's decision by conducting a review of the whole record. *See In re Atlantic Coast Conference*, 112 N.C. App. 1, 4, 434 S.E.2d 865, 867 (1993). In reviewing whether the whole record fully supports the Tax Commission's decision, this Court must evaluate whether the Tax Commission's judgment, as between two reasonably conflicting views, is supported by substantial evidence. *See In re Appeal of Perry-Griffin Found.*, 108 N.C. App. 383, 424 S.E.2d 212, *disc. review denied*, 333 N.C. 538, 429 S.E.2d 561 (1993); *see also Dixie Lumber Co. of Cherryville, Inc. v. N.C. Dep't of Env't, Health and Natural Resources*, 150 N.C. App. 144, 563 S.E.2d 212, 214 (2002). Substantial evidence must be "more than a scintilla or a permissible inference." *Wiggins v. N.C. Dep't of Human Resources*, 105 N.C. App. 302, 306, 413 S.E.2d 3, 5 (1992) (citing *Thompson v. Bd. of Educ.*, 292 N.C. 406, 233 S.E.2d 538 (1977)). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Tate Terrace Realty Investors*,

*Inc. v. Currituck County*, 127 N.C. App. 212, 218, 488 S.E.2d 845, 849 (1997). In determining whether the evidence is substantial, we must

> take into account whatever in the record fairly detracts from the weight of the [Tax Commission's] evidence. . . [T]he court may not consider the evidence which in and of itself justifies the [Tax Commission's] decision without [also] taking into account the contradictory evidence or other evidence from which conflicting inferences could be drawn.

*In re Moses H. Cone Memorial Hosp.*, 113 N.C. App. 562, 571, 439 S.E.2d 778, 783 (1994) (citations omitted).

In applying the whole record test, the reviewing court must "take into account both the evidence justifying the agency's decision and the contradictory evidence from which a different result could be reached." *Lackey v. Dept. of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982). "Finally, the reviewing court must determine whether the administrative decision had a rational basis in the evidence." *King v. N.C. Envtl Management Comm.*, 112 N.C. App. 813, 816, 436 S.E.2d 865, 868 (1993).

Moreover, when a statute provides for an exemption from taxation, any ambiguities therein are resolved in favor of taxation. *See Aronov v. Secretary of Revenue*, 323 N.C. 132, 140, 371 S.E.2d 468, 472 (1988), *cert. denied*, 489 U.S. 1096 (1989) (holding that statutory exemptions from property taxes are strictly construed against exemption); *see also in re Worley*, 93 N.C. App. 191, 195, 377 S.E.2d 270, 273 (1989). Furthermore, when a matter comes before the Tax Commission, it is the taxpayer's burden to prove that the property is entitled to an exemption. *See In re Southeastern Baptist Theological Seminary, Inc.*, 135 N.C. App. 247, 249, 520 S.E.2d 302, 304 (1999). This burden "is substantial and often difficult to meet because all property is subject to taxation unless exempted by statute of statewide origin." *Id.*

I.

The Spiritual Center argues that it is entitled to exemption of its property under N.C. Gen. Stat. § 105-278.4 because the property is used for an educational purpose. Applying the whole record test, we find that the evidence does not support the Tax Commission's finding that the Spiritual Center is not entitled to an exemption for subject developed property from ad valorem taxes on educational grounds.

**IN RE APPEAL OF THE MAHARISHI SPIRITUAL CTR. OF AM.**

[152 N.C. App. 269 (2002)]

N.C. Gen. Stat. § 105-278.4 (2001) provides that:

Buildings, the land they actually occupy, and additional land reasonably necessary for the convenient use of any such building shall be exempted from taxation if:

(1) Owned by an educational institution (including a university, college, school, seminary, academy, industrial school, public library, museum, and similar institution);

(2) The owner is not organized or operated for profit and no officer, shareholder, member, or employee of the owner or any other person is entitled to receive pecuniary profit from the owner's operations except reasonable compensation for services;

(3) Of a kind commonly employed in the performance of those activities naturally and properly incident to the operation of an educational institution such as the owner; and

(4) Wholly and exclusively used for educational purposes by the owner or occupied gratuitously by another nonprofit educational institution (as defined herein) and wholly and exclusively used by the occupant for nonprofit educational purposes.

The wording and the construction of N.C. Gen. Stat. § 105-278.4 make it clear that there are four separate and distinct requirements which the Spiritual Center must meet to qualify for an educational exemption. *See In re Atlantic Coast Conference*, 112 N.C. App. at 4, 434 S.E.2d at 867. Initially, we point out that the second requirement of § 105-278.4 is not disputed by the Tax Commission or by the County of Watauga—the Spiritual Center is not organized for profit; it is in fact, a nonprofit organization.

### A. Owned by an educational institution

[1] In its fourth conclusion of law, the Tax Commission determined that the Spiritual Center did not meet the first requirement of § 105-278.4 stating that "[t]he Spiritual Center's facilities are not owned by an educational institution such as a university, college, library or museum." In support of this conclusion, the Tax Commission found that the

Spiritual Center does not have a faculty, nor does it provide a course of study or grant degrees. The Spiritual Center is not accredited as a college or university. Foreign members of the Purusha come to the United States on visitors' visas, not student

visas. Members of the Purusha and Mother Divine do not graduate from the Spiritual Center and may stay indefinitely.

"While our courts have consistently held that tax exemption statutes must be strictly construed against exemption, they have also held that such statutes should not be given a narrow or stingy construction." *In re Wake Forest Univ.*, 51 N.C. App. 516, 521, 277 S.E.2d 91, 94, *review denied*, 303 N.C. 544, 281 S.E.2d 391 (1981); *see also Southminster, Inc. v. Justus*, 119 N.C. App. 669, 674, 459 S.E.2d 793, 796 (1995). N.C. Gen. Stat. § 105-278.4 does not require in the plain language of the statute that to be classified as an education institution, an organization must meet certain formalities such as a degree or certification, or accreditation.

The Spiritual Center argues that it is the record owner of the property and its articles of incorporation describe the corporate purpose to include providing a site for educational programs. The articles of incorporation for the Spiritual Center state that

[t]he corporation is organized exclusively for charitable, religious, educational, and scientific purposes . . . and, specifically to, create a home for world peace professionals practicing the Transcendental Meditation and Transcendental Meditation Sidhi Programs to help create world peace and harmony in the United States and the world and *to create and offer to the public, and those living in the community, education programs* in developing higher states of consciousness through Maharishi's Vedic Science.

(emphasis added).

Stephen Souza, vice president of the Spiritual Center, testified at the hearing before the Tax Commission that the Spiritual Center teaches transcendental meditation, advanced meditation such as TM-Sidhi and other courses. Also, at the hearing, several experts testified that the Spiritual Center was an educational institution. Dr. Maya McNeilly, a psychologist, who is an adjunct professor at Duke University Medical Center, testified that Duke University is not unique in giving college credit for courses where people are spending their time meditating. She pointed out that "other universities such as University of Massachusetts at Amherst . . . UNC does, University of Arizona does, Harvard does, I believe Stanford does, and UCLA might. And there are probably others that I'm just not aware of."

Dr. Dale T. Snauert, a professor in the Department of Education Studies at Adelphi University testified that the Spiritual Center is similar to a university, college, school or seminary.

The Spiritual Center, has from my reading of it, a defined set of purposes, which are education. They have education goals and those goals . . . the fulfillment of those goals are the reason of existence for the Spiritual Center, just as the reason a university, college, school would have specialized, formalize, public goals and objective . . . The Spiritual Center has a curriculum as far as I can tell. It has an administrative structure. It has a governing body, a board of trustees, I believe. It has facilities that are devoted to the fulfillment of the educational purposes. It engages in various pedagogical practices, seminars, teaching functions of various kinds. So, . . . the Spiritual Center meets the criteria of my definition of an educational institution.

We hold that even construed strictly the term educational institution easily accommodates the nature of the Spiritual Center's organization. Accordingly, we hold that the Tax Commission erred in concluding that the Spiritual Center was not a educational institution.

### B. The premises must be of a kind commonly employed for educational activities by similar institutions

[2] The Tax Commission also concluded that the Spiritual Center did not meet the third requirement of § 105-278.4 stating that "[t]he Spiritual Center's large meditation facilities and two to four room residential suites are not of a kind commonly employed in or naturally and properly incident to the operation of an educational institution."

In its findings of fact supporting this conclusion, the Tax Commission stated that "the property under appeal consists of 61 parcels of real property and associated personal property in numerous structures, including meditation, dining, residential and office facilities." However, the Tax Commission presented no contrary evidence and we find no evidence in the record to show that the Spiritual Center's facilities are not the kind commonly employed by educational institutions.

Indeed, the record on appeal shows that other universities, such as Duke University, set aside places for people to meditate. Dr. McNeilly testified that "appropriate space needs to be identified that will facilitate and support the learning and the transmission of knowl-

edge and then the practicing of skills. The actual meditating is part of the education." Dr. McNeilly also testified at the hearing that

> Everything that I have seen, heard and read is very consistent with what happens in other academic institutions where meditation is taught, academic institutions meaning universities like Duke, like UNC, like actually most medical centers—Harvard, Stanford, University of Arizona and so on—that's what's happening there is . . . a curriculum and there are objectives—educational objective that are clearly delineated and that are practiced along the lines of developing skills to then accomplish those objectives.

In light of this evidence, we hold that a review of the whole record fails to show substantial evidence supporting the Tax Commission's determination that the Spiritual Center did not meet the third requirement of § 105-278.4.

### C. Wholly and exclusively used for educational purposes

[3] The Tax Commission also determined that the Spiritual Center did not meet the fourth requirement of § 105-278.4 stating that "[t]he Spiritual Center's facilities are not wholly and exclusively used for educational purposes because members of the Purusha and Mother Divine use their compounds primarily for the group practice of meditation."

> In support of this conclusion, the Tax Commission found that:

> 2. As of the tax valuation date January 1, 1999, the western compound was occupied and used by over 300 single men who compose a group that the Spiritual Center calls the Purusha. The members of the Purusha meditate eight hours a day, from 7:00 a.m. to 11:45 a.m. and from 4:30 p.m. to 7:45 p.m. Purusha members meditate as a group in a large meditation hall. On the Spiritual Center's premises in the afternoons, the Purusha also telephone their sponsors for contributions and undertake personal business and/or administrative office work. This group meditation occurs each day of the year, and many of the Purusha have been members since the group formed 20 years ago.

> 3. Members of the Purusha also attend an evening program from 8:30 p.m. to 9:15 p.m. This time is for, among other matters, viewing video tapes, teleconferencing with Maharishi Yogi who resides in Holland, and discussing matters concerning meditation.

4. Single women occupy and use the eastern compound. The women reside in two to four room residential suites. A group of over 100 women are members of what is called the Mother Divine as of January 1, 1999. The Mother Divine engage in the daily practice of group meditation similar in duration to the Purusha. Individuals remain members of the Mother Divine for years.

5. The Purusha and Mother Divine are experienced practitioners of Transcendental Meditation an TM-Sidhi programs. The TM-Sidhi is and advanced meditation program. In the United States individuals may take a course to learn the Transcendental Meditation technique for a fee. The content of this is confidential, and individuals who take this course agree not to disclose its contents. The Transcendental Meditation is trademarked and is learned in a seven-step procedure occurring over seven days. At the end of those steps, the individuals attending the course have learned to meditate as efficiently and correctly as someone who has been practicing for 20 years.

6. During the extended daily periods of group meditation, the Purusha and Mother Divine focus on a Mantra, which is a sound that has no meaning. In focusing on the mantra, the meditator's mind becomes "settled down" and is not contemplative. The meditator's bodies are at rest, usually with their eyes closed. The surroundings in the Spiritual Center's meditation facilities are quiet during group meditation.

7. No information is transmitted to the Purusha and Mother Divine during their group practice; training or development of knowledge or skills is not the primary activity because the Purusha and Mother Divine are already experienced in meditation.

8. After meditating, members of the Purusha and Mother Divine from time to time make notes of their experience and compare their experiences with those of others by reading ancient literature.

N.C. Gen. Stat. § 105-278.4(f) (2001) defines an "educational purpose" as

one that has as its objective the education or instruction of human beings; it comprehends the transmission of information and the training or development of the knowledge or skills of individual persons. The operation of a golf course, a tennis court,

a sports arena, a similar sport property, or a similar recreational sport property for the use of students or faculty is also an educational purpose, regardless of the extent to which the property is also available to and patronized by the general public.

The County of Watauga and the dissent rely on our Court's holding in the Matter of the Appeal of Chapel Hill Day Care Center, Incorporated, 144 N.C. App. 649, 551 S.E.2d 172 (2001), as authority for the position that the Spiritual Center is not entitled to an exemption under N.C. Gen. Stat. § 105-278.4. In *Chapel Hill Day Care Center*, we held that the child care center was custodial rather than educational and therefore not eligible for a property tax exemption for educational institutions. Our Court pointed out that "[t]here was ample evidence in the record from which the Tax Commission could conclude that the [day care center] is not a traditional school and is not [w]holly and exclusively used for educational purposes." *Id.* at 658, 551 S.E.2d at 178.

We find the present case readily distinguishable and not analogous to *Chapel Hill Day Care Center*. In this case, the Spiritual Center is a residential center, which offers training to adults in meditation in short and long term courses. Unlike the child care center in *Chapel Hill Day Care Center*, the Spiritual Center is not a custodial program but is a facility that offers training by self-study, lecture and practical experience. Moreover, the record shows substantial evidence that the training or development of skills of individuals occurs at the Spiritual Center. The Spiritual Center provides instructional sessions and teleconferences on Vedic Sciences, and meditation teachers instruct on Sanskrit and Vedic Sciences. Thus, we find that *Chapel Hill Day Care Center* does not control here.

Moreover, the dissent's comparison to *In re North Carolina Forestry Foundation, Incorporated*, 296 N.C. 330, 250 S.E.2d 236 (1979), fails to note the obvious difference, between a nonprofit foundation's forest property being primarily used as a commercial property by a paper company in which the paper company was given operational control over the forest, and the case at bar, where nonprofit organizations, that work with various schools and universities, run educational programs for men, women, and young girls. Thus, applying the whole record test, we find substantial evidence in the present case showing the use of the Spiritual Center's property as educational. The record indicates that the Spiritual Center offers a variety of courses in short-term and long-term meditation, Vedic

IN RE APPEAL OF THE MAHARISHI SPIRITUAL CTR. OF AM.

[152 N.C. App. 269 (2002)]

Science and Sanskrit through live and videotape formats. The meditation sessions involve specific instructions from teachers. Basic transcendental meditation may be learned in seven days, however increased study leads to better proficiency. Dr. McNeilly, who teaches meditation courses at Duke University, testified as an expert at the hearing that the Spiritual Center is "an academic institution that continues to train and educate people who are learning."

The record also indicates that participants practice meditation techniques, review their techniques in light of Vedic Science, discuss their progress with instructors and study Sanskrit. Dr. McNeilly explained, at the hearing that learning meditation is no different than learning

> medicine or psychology or, to my knowledge, law, taxes. At the beginning stages, you spend a good bit of time perhaps with an instructor, with a professor. They talk to you, they lecture, you attend lectures. You might see videotapes, you might engage in discussions, study sections and so on . . . but as time progresses that contact diminishes and progressively diminishes the more advanced you get in the discipline.

She described how meditation classes are taught at Duke University, "[w]e give the student less and less guidance, if you will, because then the focus of the education turns to them learning on their own by doing it."

Dr. David Orme-Johnson, a psychologist, past chairman of the Department of Psychology at the Maharishi University of Management, testified that transcendental meditation and Vedic science and technology arise out of the Indian Eastern tradition that is

> an oral tradition and it's learned on a one-on-one basis between teacher and student. And the reason for that is because everybody's experience is different, and . . . the teacher imparts some information and the student practices that and then gives feedback on what happened . . . it's a personal learning process that's tailored to that individual's particular responses to the instruction, and that's why it has to be one-to-one basis and not put in a book.

Dr. Orme further testified that participants are learning while meditating "because they are developing deeper experiences of their own consciousness and fabrics of their consciousness." The basic part is

IN RE APPEAL OF THE MAHARISHI SPIRITUAL CTR. OF AM.

[152 N.C. App. 269 (2002)]

"while they are meditating, having the experience, and then comparing it with the literature is the second part—second phase of it." Dr. Orme also testified that based on his professional knowledge of education and based on his knowledge of the Spiritual Center that the Purusha and Mother Divine program and the Ideal Girls School were involved in educational activities. He also opined that there was a transmission of information taking place at all of the programs.

In addition, at the hearing, Dr. Verne Bacharach, a professor of psychology, who testified for the County, stated under cross-examination that transcendental meditation was an educational experience. He also acknowledged that during his deposition testimony that he had no opinion about whether the transmission of information or knowledge about transcendental meditation techniques results in the knowledge or skills of individual persons or is educational.

Accordingly, in applying the whole record test, we find that the evidence does not support the Tax Commission findings and conclusions of law. To the contrary, the record shows substantial evidence that the Spiritual Center met the four separate and distinct requirements in order to qualify for an educational exemption under N.C. Gen. Stat. § 105-278.4.

II.

The Spiritual Center also challenges the Tax Commission's determination that its undeveloped property was not entitled to an educational exemption under N.C. Gen. Stat. § 105-278.4(b). Since the Tax Commission denied exemption for the Spiritual Center's developed property, it did not determine whether the amount of undeveloped acreage involved was "reasonably necessary" for the use of the developed property, which we hold today is entitled to the educational exemption. Thus, we remand this issue to the Tax Commission to determine whether the undeveloped land is "reasonably necessary" for the use of the exempted property and therefore should be entitled to an education exemption under N.C. Gen. Stat. § 105-278.4(b).

[4] Finally, we conclude that the Spiritual Center is entitled to an educational exemption for the property used by the Ideal Girls School. N.C. Gen. Stat. § 105-278.4(c) provides in pertinent part:

Notwithstanding the exclusive-use requirements of subsections (a) and (b), above, if part of a property that otherwise meets the requirements of one of those subsections is used for a purpose that would require exemption if the entire property were

so used, the valuation of the part so used shall be exempted from taxation.

The statute expressly provides for partial exemption where a discrete part of a larger property is used for tax exempt purposes. The record shows that Maharishi Global Administration Through Natural Law, which operates the school is a California nonprofit corporation whose purpose includes promoting Vedic Science and technology, and natural law, and establishing educational programs.

Moreover, there was testimony at the hearing that the Maharishi Global Administration Through Natural Law has been teaching transcendental meditation and related programs for the past 41 years. It was also clear from the record that the Heavenly Mountain Ideal Girls' School is an educational institution that is being used for educational purposes. The courses offered by the school, for grades 9 through 12, include math, science, physical education and the arts. The Girls' School is in full compliance with state law relating to private schools, and parents who send their children to the school are deemed to have met the state's requirements for compulsory education. Moreover, the school grants high school diplomas, and graduates have attended Wellesley and Colorado Colleges, and other post-secondary institutions.

In sum, we reverse the Tax Commission's determination that the subject developed property and the Heavenly Mountain Ideal Girls' School is not entitled to the educational exemption authorized by N.C. Gen. Stat. § 105-278.4. We further remand to determine whether the undeveloped property of the Spiritual Center is "reasonably necessary" for the use of the exempted property and therefore should likewise be exempted.

Reversed in part; remanded in part.

Judge HUDSON concurs.

Judge TYSON dissents.

TYSON, Judge, dissenting.

The majority did not properly apply the standards for judicial review of decisions of the North Carolina Property Tax Commission ("Commission") and has ignored the burden imposed on the taxpayer by N.C. Gen. Stat. § 105-282.1. Accordingly, I respectfully dissent.

IN RE APPEAL OF THE MAHARISHI SPIRITUAL CTR. OF AM.

[152 N.C. App. 269 (2002)]

The Spiritual Center contends and the majority finds that the Commission's findings and conclusions are unsupported by competent, material and substantial evidence. This standard of review is known as the "whole record" test. N.C. Gen. Stat. § 105-345.2(5) (2001). The whole record test is not "a tool of judicial intrusion." *Rainbow Springs Partnership v. County of Macon*, 79 N.C. App. 335, 341, 339 S.E.2d 681, 685 (1986) (quoting *In re Rogers*, 297 N.C. 48, 65, 253 S.E.2d 912, 922 (1979)). This test does not allow a reviewing court to substitute its own judgment in place of the Commission's judgment even when there are two reasonably conflicting views. *Id.* at 341, 339 S.E.2d at 684. The whole record test merely allows a reviewing court to determine whether the decision of the Commission is supported by substantial evidence. *Id.* at 341, 339 S.E.2d at 685.

" 'Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Thompson v. Wake County Board of Education*, 292 N.C. 406, 414, 233 S.E.2d 538, 544 (1977)). "The credibility of the witnesses and resolution of conflicting testimony is a matter for the administrative agency to determine." *In re Appeal of General Tire, Inc.*, 102 N.C. App. 38, 40, 401 S.E.2d 391, 393 (1991) (citing *Commissioner of Insurance v. Rate Bureau*, 300 N.C. 381, 406, 269 S.E.2d 547, 565, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 300-01 (1980)). This Court cannot overturn the Commission's decision if supported by substantial evidence. *Rainbow Springs*, 79 N.C. App. at 343, 339 S.E.2d at 686.

The Spiritual Center argues that it is entitled to an educational exemption. The statute sets forth four separate and distinct requirements which a taxpayer must prove to qualify for an education exemption from taxation:

(1) Owned by an educational institution (including a university, college, school, seminary, academy, industrial school, public library, museum, and similar institution);

(2) The owner is not organized or operated for profit and no officer, shareholder, member, or employee of the owner or any other person is entitled to receive pecuniary profit from the owner's operations except reasonable compensation for services;

(3) Of a kind commonly employed in the performance of those activities naturally and properly incident to the operation of an educational institution such as the owner; and

(4) Wholly and exclusively used for educational purposes by the owner or occupied gratuitously by another nonprofit educational institution (as defined herein) and wholly and exclusively used by the occupant for nonprofit educational purposes.

N.C. Gen. Stat. § 105-278.4(a) (2001). The majority opinion correctly states that the taxpayer seeking exemption from property taxes has the burden of establishing entitlement to such an exemption. N.C. Gen. Stat. § 105-282.1(a) (2001).

## I.  Spiritual Center

The Commission concluded that the Spiritual Center's facilities are not wholly and exclusively used for educational purposes. The dispositive issue is whether this conclusion and the Commission's findings of fact are supported by substantial evidence.

The majority's opinion focuses on the expert testimony presented by the Spiritual Center and holds that this testimony was substantial evidence that the Spiritual Center met the fourth requirement to qualify for an exemption for educational purposes under N.C.G.S. § 105-278.4. Presuming this testimony is substantial evidence, the majority misapplies our standard of review. Such evidence would not warrant reversal of the Commission if there is any evidence of substance which tends to support the Commission's findings and conclusions. This Court is bound by such evidence, even though there is evidence that would have supported a finding to the contrary. *See In re Appeal of Perry-Griffin Found.*, 108 N.C. App. 383, 393, 424 S.E.2d 212, 218 (1993) (this Court is not permitted to replace the Commission's judgment with its own judgment even when there are two reasonably conflicting views).

In this case, the Commission received conflicting expert testimony regarding whether the practice of meditation eight hours a day by the Purusha and Mother Divine is an educational activity and whether the Spiritual Center is an educational institution. Dr. Orme-Johnson, a psychologist, testified that participants in meditation are learning. Dr. McNeilly, a professor of psychology, testified that the Spiritual Center is "an academic institution." On the other hand, Dr. Bacharach, a professor of psychology and qualified as an expert witness for Watagua County, testified that the Spiritual Center is not an educational institution and that while the teaching of the TM technique of meditation over a seven-day period is an educational or learning activity, the practice of meditation eight hours a day would

not be a learning activity. The Commission weighed the credibility of the witnesses, accepted the testimony of Dr. Bacharach and necessarily rejected the testimony of the other experts. The testimony of Dr. Bacharach was sufficient to support the Commission's finding and conclusion that the Spiritual Center's facilities are not "wholly and exclusively" used for educational purposes.

The granting of exemption from taxation to some necessarily increases the tax burden on others. *See In re Appeal of Worley*, 93 N.C. App. 191, 195, 377 S.E.2d 270, 273 (1989). Accordingly, "[s]tatutes exempting specific property from taxation because of the purposes for which [the] property is held and used . . . should be construed strictly . . . against exemption and in favor of taxation." *Id.* (quoting *Harrison v. Guilford County*, 218 N.C. 718, 721, 12 S.E.2d 269, 272 (1940)). This does not mean that exemption statutes should be construed narrowly or stingingly, but simply means that "everything [should] be excluded from [the statute's] operation which does not clearly come within the scope of the language used . . . ." *Id.* (citation omitted).

The plain language of N.C.G.S. § 105-278.4(a)(4) states "*[w]holly and exclusively* used for educational purposes by the owner . . . ." (Emphasis supplied). Merely providing some short and long-term meditation courses, as well as Vedic Science and Sanskrit courses, does not qualify the Spiritual Center for exemption. Mr. Souza, a member of the Purusha and vice-president of the Spiritual Center, testified that: (1) the purposes identified in the Articles of Incorporation were to create a home for the world peace professionals or Purusha and Mother Divine members, to help create world peace and harmony through the Maharishi Effect, and to create and offer to the public, educational programs in developing higher states of consciousness, (2) 1,000 Purusha members is their goal because ancient texts suggest that this will have a profound effect on the environment through the Maharishi Effect, and (3) part of the purpose and current use of the meditation halls within the Spiritual Center is to create an "air of tranquility" or Maharishi Effect by having hundreds of experts in Maharishi's advanced Transcendental Meditation Sidhi program meditate as an amenity for the development of Heavenly Mountain Resort, which is situated between the two meditation halls. Thus, while the Spiritual Center does offer some educational activity that is not its primary purpose. The record clearly establishes that the primary purpose of the Spiritual Center is the practice of meditation by Purusha and Mother Divine members, many of which have been a part of their

group for twenty years. *See In re Appeal of North Carolina Forestry Found., Inc.*, 296 N.C. 330, 250 S.E.2d 236 (1979) (nonprofit foundation owned a forest for the purposes of promoting improved forestry methods, forestry research, and education, but exclusive use element was not met because a paper company actually occupied and used the forest for commercial purposes, making the educational use merely incidental); *see also In re Appeal of Chapel Hill Day Care Center, Inc.*, 144 N.C. App. 649, 551 S.E.2d 172 (2001) (while some of the daycare's activities served to educate children enrolled, this was not enough to trigger tax exempt status under N.C.G.S. § 105-278.4 which requires an institution to have a "[w]holly and exclusively" educational purpose); *In re Appeal of Atlantic Coast Conference*, 112 N.C. App. 1, 434 S.E.2d 865 (1993) (athletic activities are a natural part of the education process and the role of the ACC is to promote college athletics).

## II.  Ideal Girls' School

The Commission further concluded that the buildings used in part by the Ideal Girls' School are not owned or occupied gratuitously by an educational institution, and thus not entitled to exemption. The Commission's findings and conclusion are supported by substantial competent evidence.

N.C. Gen. Stat. § 105-278.4(a)(1) requires that the property be "[o]wned by an educational institution (including a university, college, school, seminary, academy, industrial school, public library, museum, and similar institution)." I interpret the general phrase "educational institution" in relation to the express terms which follow it according to the dictates of *ejusdem generis*, a well established rule of statutory construction providing that " 'where general words follow a designation of particular subjects or things, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character and nature as those specifically enumerated.' " *State v. Lee*, 277 N.C. 242, 244, 176 S.E.2d 772, 774 (1970) (citations omitted); *see also State v. Craig*, 176 N.C. 740, 744, 97 S.E. 400, 401 (1918) ("when particular and specific words or acts, the subject of a statute, are followed by general words, the latter must, as a rule be confined to acts and things of the same kind").

Here, the terms immediately following the phrase "educational institution" are usually, if not exclusively, aimed at education. The Ideal Girls' School is owned and operated by Maharishi Global

Administration Through Natural Law ("MGANL"). Mr. Souza testified that the Restated Articles of Incorporation for MGANL state that the first purpose of the corporation is "to promote throughout the world knowledge that life is the ever-evolving expression of Natural Law;" the second purpose listed is "to bring an end to all problems and suffering throughout the world through Maharishi Vedi Science and Technology;" the third purpose is "to work closely with other organizations dedicated to the advancement of the Maharishi Sthapatya Veda to create ideal housing;" the fourth purpose listed is "to establish facilities to introduce programs of Natural Law to everyone through education, health, economy, administration; the fifth purpose is to accept, hold, invest, reinvest, administer any gifts, legacies, etc.;" and the sixth purpose listed is "to perform any and all lawful acts." As with the Spiritual Center, the primary aim of MGANL is not education. In accordance with the dictates of *ejusdem generis*, I would conclude that the Ideal Girls' School does not fall within the scope of "educational institution" as that phrase is used in N.C.G.S. § 105-278.4(a)(1).

### III.  Conclusion

Upon considering the record as a whole, the taxpayer failed to meet its burden of proof. I would hold that the findings, conclusions, and decision of the Property Tax Commission are supported by competent, material and substantial evidence and must be affirmed.